EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES v. BAUMGARDNER et al.

No. 140.

District Court, W. D. Missouri, St. Joseph Division.

July 19, 1944.

Michaels, Blackmar, Newkirk, Eager & Swanson and Robert E. Coleberd, all of Kansas City, Mo., for plaintiff.

Dean H. Leopard and Sam T. Evans, both of Gallatin, Mo., for defendant Roberta Baumgardner.

McCarthy & McCarthy and D. M. McCarthy, all of Hays, Kan., for defendant Ray Wentworth.

DUNCAN, District Judge.

This is an action by the Equitable Life Assurance Society of the United States, a New York corporation, against Roberta Baumgardner, a resident of Missouri, and Ray Wentworth, administrator of the estate of Wilbur H. Pugh, deceased, a resident of the State of Kansas. This action is brought under the Federal Interpleader Act, U.S.C.A. Title 28, Section 41(26).

Plaintiff paid into the registry of the court, the proceeds of the insurance policy in controversy, and each of the defendants has filed answer claiming the fund.

On August 30, 1933 plaintiff issued its policy No. 9,215,984 in the sum of $1,000 upon the life of Wilbur H. Pugh, and the insured designated his wife, Leanore W. Pugh as his beneficiary. Leanore W. Pugh died on November 19, 1942, and the insured died either on the evening of April 10, or the morning of April 11, 1943, intestate, and without issue. All the premiums had been paid upon the policy and its provisions were in full force and effect at the time of the death of the insured, and although there was a small loan, the possession of the policy had been retained by the insured.

The provisions of the policy with which we are concerned are:

"If there is no written assignment of this policy in force and on file with the Society or if the only assignment in force and on file is to the Society as security for an advance, the Insured may from time to time, by written notice duly filed at the Society's Home Office, change the beneficiary, but such change shall take effect only upon its endorsement on this policy by the Society.

"If the executors or administrators of the Insured be not expressly designated as beneficiary, any part of the proceeds of this policy with respect to which there is no designated beneficiary living at the death of the Insured and no assignee entitled thereto, will be payable in a single sum to the children of the Insured who survive the Insured, in equal shares, or should none survive, then to the Insured's executors or administrators."

Following the death of his wife, the beneficiary in the policy, Pugh had not designated any other person as the beneficiary. Pugh lived alone in Hays, Kansas, near W. W. Ward, who at that time was the agent of plaintiff at Hays. About 7 o'clock on the evening of April 10, 1943, Pugh called Ward and asked him to come to his home. Upon arrival of Ward at the home of insured, the insured advised Ward that he desired to name a new beneficiary in his policy of insurance, and thereupon Ward obtained from among his supplies, which had been furnished to him by the plaintiff, a blank form for change of beneficiary. He filled it out and it was signed by the insured and his signature witnessed by Ward.

Insured named Roberta Baumgardner, a half-sister, as the beneficiary. Ward then informed insured that he would mail the application, together with the policy, to the company's office. At the time of the signing of the application Ward states that the insured apparently was in his usual health, and that he had seen him about the streets of Hays during the afternoon of that day, but that he did not have the appearance of a well man, and he advised Ward that he was going to the Veterans Hospital at Wichita for a physical checkup.

Insured was found dead in his home about 12 o'clock noon on the following day (Sunday).

At the time of the trial, plaintiff's agent Ward was ill and confined in a hospital at Hays, and a sworn statement of what he would testify to, if present, was introduced in evidence.[1] Ward states that he mailed the application some time Sunday afternoon, and that at the time of the mailing, he did not know of the death of the insured, but learned of it the following day. The application and the policy were directed by Ward to the office of the insurer in Kansas City, Missouri, and arrived at its office, according to the plaintiff, in the first mail on Monday morning.

Upon learning of the death of insured,

---

[1] "On Saturday evening, about the hour of seven o'clock P. M. on April 10th. 1943, it being saturday, he called me by telephoned and requested that I run over to his house and see him. I did this. He was in his usual health, at the time I arrived. I had seen him walking around in the business district of Hays, Kansas, that afternoon. He told me he wished to change the name of the beneficiary in the aforesaid policy. As I had a printed blank form for change of beneficiary supplied by the Company aforesaid in my car, I obtained it and Mr. Pugh signed his name to it after it was filled out, I witnessed his signature and told him I would mail it in for him together with his policy to the Company. I mailed his policy and the change of beneficiary, made out as aforesaid, to the Kansas City office of the Plaintiff Company the next day, sunday, in the afternoon, it being April 11th. 1943. My recollection and belief is and I remember as well as a man can, it was sunday afternoon 'I mailed the papers aforesaid, as I live with my Mother and my associations with her and my personal affairs on sunday mornings do not permit me to engage in business transactions at such times.

"I did not learn of the death of Mr. Pugh until monday morning April 12th. 1943 and immediately we phoned the Kansas City office of the Company advising it Mr. Pugh was deceased.

"I did not write Mr. Pugh's insurance. I did not have a specific instruction from the Company to fill out or mail in the request of Mr. Pugh for a change of beneficiary. The Company does furnish us printed blanks, with questions on them, to be answered by policy holders who move into our territory, from some other section of the country. There are a number of questions on such a blank. Among them, one is, in effect, Do you have a proper beneficiary. Another such question is, as I remember it, Do you have a contingent beneficiary. There is nothing further on such a blank, about beneficiaries, I now recall. I am ill and at the hospital in Hays, Kansas, as I make this affidavit and have no such blanks with me. In the usual course of business, the Company writes us a policy holder has moved into our territory. We then call on such policy holder, procure answers to the questions and mail them in to the Company. After being called to Mr. Pugh's home, in furnishing blank for change of beneficiary, and in mailing it to the Kansas City office, together with Mr. Pugh's policy, I felt I was befriending Mr. Pugh and rendering a service to a policy holder.

"While I was at Mr. Pugh's home, as set out herein, he told me his Doctor had advised him to go to the Veteran's Hospital at Wichita for a rest and check up. He was not sick while I was there, but did not appear as a strong, well man does, when he has no need of a Doctor."

Ward called the representative of the company in Kansas City by telephone and advised of that fact. Notwithstanding that information, the application and the policy were forwarded by the plaintiff's office in Kansas City to the home office in New York, together with the information of the death of insured. The endorsement of the name of the beneficiary was not made by the home office.

After the appointment of the defendant Wentworth as administrator of the estate of the insured, the plaintiff issued its check jointly to such administrator and to the defendant Roberta Baumgardner. The parties having failed to jointly endorse such check, it was withdrawn by the plaintiff and the proceeds paid into this court at the time of filing this suit.

The only material fact in controversy is respecting the time of the mailing of the application and the policy by Ward. The defendant Baumgardner contends that the application and policy were mailed on Saturday evening April 10, 1943. Whereas the defendant Wentworth contends that they were not mailed until Sunday afternoon, following the death of the insured. Ward in his statement says that he did not mail them on Saturday, that his relations with his mother, with whom he lived, and some personal affairs were such that he did not transact any business on Sunday morning, and that sometime Sunday afternoon the application and policy were mailed to Kansas City.

Upon learning of the death of her half-brother, the defendant Baumgardner went to Hays, Kansas, and she testified that she had a conversation with Ward in which he told her that he had mailed the application on Saturday evening. In view of the positive statement of the witness Ward that the application and the policy were not mailed until Sunday afternoon, I am convinced that the application and the policy were not mailed until that time.

There is no substantial evidence as to even the approximate time of the death of insured. No person saw him from the time he executed the application shortly after 7 o'clock on Saturday evening, until he was found dead about noon on Sunday. The only evidence whatsoever concerning the question comes from Mrs. Baumgardner, whose husband is a physician. She stated that she described to her husband the condition of the body of the insured, and he informed her that in his opinion the in-

sured had been dead about six hours. But there is no evidence from which the court can positively say at what time between 7 o'clock Saturday evening and 12 o'clock noon Sunday the insured died. Therefore, the question of whether or not the application and the policy were mailed Saturday night or Sunday afternoon is not of controlling importance.

It is the contention of the defendant Baumgardner that as there was no named beneficiary following the death of the wife of the insured, that the insured in the execution of the application and the delivery of the same, together with the policy, to the agent of the company, who assisted in making it out and witnessing it, was a substantial compliance with the requirements of the policy respecting change in beneficiary, and that as the provision of the policy providing that no change in beneficiary should become effective until it had been endorsed by the company in the home office was for the sole benefit of the insurer, such provision was waived by the insurer by the filing of this suit and the depositing of the money in court.

The defendant Wentworth contends that the witness Ward was the agent of the insured in the mailing, or in the transmitting of the application and the policy to the insurer for its endorsement thereon of the beneficiary, and that when the insured died, the authority of Ward expired, and that he had no right thereafter to deposit the application and the policy in the mail for transmission to the insurer.

Defendant Wentworth also contends that the policy was a Kansas contract, having been delivered, and the premiums paid, in the State of Kansas, and that the provisions of the policy respecting the change in beneficiary under the Kansas law requires strict construction, and that a change of beneficiary could not take place without the endorsement by the home office, and that plaintiff could not waive the provisions of the policy respecting the change of beneficiary after the death of the insured.

One of the cases upon which defendant Wentworth relies is Ætna Life Insurance Company v. Worpell, 145 Kan. 166, 64 P.2d 11, 12, a case in which the insured attempted to change the beneficiary prior to his death. Worpell addressed a letter to the insurance company dated the day of his death, and which was found on his desk when his body was found, containing

the following language: "Please change beneficiary to Mrs. Zara Worpell." The trial court held that the beneficiary had been changed, but the case was reversed on appeal. In that case the policy contained the following provision: "The beneficiary may be changed as often as desired, and such change shall take effect on receipt at the Home Office of the company, before the sum insured or any installment thereof becomes due, of a written request accompanied by the policy for endorsement. * * *" The court used the following language in discussing whether or not the change had been effected: "We shall first consider whether the writing on the bottom of the letter which was placed there June 13, 1935, operated to change the beneficiary. It will be noted that the policies provided how changes in beneficiary might be made. *As it lay there on the desk by the dead body of the insured, we are safe in saying that it had no force and effect.*" (Emphasis supplied.)

In the Worpell case the defendant raised the question of waiver. That is, that the company, by taking a release from the original beneficiary, and the paying of the money into court, waived the provision of the policy that the changing of beneficiary should become effective upon the receipt at the home office, before any sum should become due under the provisions of the policy, were waived. The only language in the opinion with respect to this question is: "We have concluded that nothing the insurance company did after the death of insured operated to waive the requirement in each of the policies, and that the change of beneficiary could only be made by substantial compliance with the provision in the policy."

The factual situation is quite different in the Worpell case. In that case there was an existing beneficiary, a former wife, from whom insured had been divorced. The beneficiary and the insured had worked and contributed to the payment of the premiums on the policy. Following the divorce of the insured and the beneficiary, no further premiums were paid. At the time of the death of the insured the policy had been converted to paid-up extended insurance beyond the date of the self-inflicted death of the insured. At the time of his death, insured was married to Zara Worpell.

There is no indication what the court would have held had the insured forwarded the request for change of beneficiary to the company prior to his death, or separated with its possession by delivering it to an agent of the company for the purpose of transmitting it to the company. The opinion does not say that the provisions of an insurance policy with respect to change of beneficiary made for the sole benefit of the insurer cannot or may not be waived by the insurer after the death of insured, where the application was executed prior to his death, and everything done by him which reasonably could have been expected of him to change his beneficiary. It simply says that there was a mere unexecuted intention to change the beneficiary. That, of course, is not sufficient under any of the decisions on either side of this question.

In the other Kansas case cited by defendant Wentworth, Hoffman v. Federal Reserve Life Insurance Co., 123 Kan. 554, 255 P. 980, there was not even an attempt to change the beneficiary. The insured committed suicide, and prior to doing so, wrote a note stating that she had some insurance and hoped that her parents could collect it. Of course, under this state of fact, there was not even an attempt to change the beneficiary.

Another case relied upon by the defendant Wentworth, is that of Freund v. Freund, 218 Ill. 189, 75 N.E. 925, 109 Am. St.Rep. 283. In that case the Illinois court read into an insurance policy the provisions of a New York statute requiring the consent of the insurer to change the beneficiary in an insurance policy. But in the case under consideration here, no statute has been cited that would change the clear provisions of the policy which give to the insured the absolute right to change his beneficiary without the consent of the insurer.

Assuming as true the contention of defendant Wentworth that it is a Kansas contract, i.e., the changing of the beneficiary, which under the terms of the policy is to be finally consummated in New York, I find nothing in any of the Kansas cases cited holding that a substantial compliance with the provisions of a policy of insurance would not be all that is required to change a beneficiary or name a new beneficiary where there is no requirement as to consent on the part of the insurer. Nor

do I find any language in the decisions holding that under such circumstances the insurer may not waive, even after the death of the insured, a provision of a policy made for its benefit and protection, especially where the beneficiary which it was sought to change did not have, or could not have a vested interest in the policy.

Reading those cases in the light of the facts in the case under consideration, especially in view of the fact that there was no named beneficiary after the death of insured's wife, it seems to me that they do not sustain the position of the defendant Wentworth with respect to waiver, or as to strict compliance with the terms of the policy.

The next question raised by the defendant Wentworth is that of agency. In the affidavit of Ward, the company's local agent, it is stated that: "I did not write Mr. Pugh's insurance. I did not have a specific instruction from the Company to fill out or mail in the request of Mr. Pugh for a change of beneficiary. The Company does furnish us printed blanks, with questions on them, to be answered by policy holders who move into our territory, from some other section of the country. There are a number of questions on such a blank. Among them, one is, in effect, Do you have a proper beneficiary. Another such question is, as I remember it, Do you have a contingent beneficiary. There is nothing further on such a blank, about beneficiaries, I now recall. I am ill and at the hospital in Hays, Kansas, as I make this affidavit and have no such blanks with me. In the usual course of business, the Company writes us a policy holder has moved into our territory. We then call on such policy holder, procure answers to the questions and mail them in to the Company. After being called to Mr. Pugh's home, in furnishing blank for change of beneficiary, and in mailing it to the Kansas City office, together with Mr. Pugh's policy, I felt I was befriending Mr. Pugh and rendering a service to a policy holder."

It will be recalled that insured called Mr. Ward and advised him of his desire to name a beneficiary in his policy, and that pursuant to such request, Ward obtained forms from his supplies, which had been furnished to him by the insurer, and filled out the blank, witnessed the signature of Pugh, obtained the policy, and volunteered to see that it was mailed to the company.

Apparently the service which Ward rendered in the matter of filling out and forwarding the application for change of beneficiary was a service which the company rendered to its policy holders through its local agents, and the insured had a right to request such service, and to rely upon the fulfillment of the obligation which attached to it.

It is not contended that any action of Ward could be binding upon the company in the matter of the changing of the beneficiary, or in the naming of a new beneficiary. That was a matter which, under the terms of the policy, had to be performed by the company itself. Accepting this view of the matter, the delivery of the application and the policy to the company agent for the purpose of transmitting it to the company's home office placed it beyond the immediate control of the insured and into proper channels of transmission. Therefore, I do not believe that the ordinary rules respecting termination of agency upon the death of a principal apply in this case. I do not believe that the relationship was such that the death of the insured would immediately stay the hand of the company's local agent in fulfilling his obligation in mailing the application and policy.

The principle of law respecting change in beneficiary is stated in 37 C.J. 584, § 350(b): "Policies authorizing a change in beneficiary usually specify the mode of effecting the change * * *. In order to effect a change of beneficiary the mode prescribed by the policy must be followed, it being held in some cases that a substantial compliance is necessary and in others that a strict compliance is required. A mere unexecuted intention to change the beneficiary is not sufficient. The company has a right to insist upon compliance with the provisions of the policy, and while it may waive or be estopped to assert provisions intended for its benefit and protection, a waiver by it after the death of the insured is ineffectual as against the original beneficiary. On the principle that equity regards as done that which ought to be done, the courts will give effect to the intention of the insured by holding that the change of beneficiary has been accomplished where he has done all that he could to comply with the provisions of the policy, as * * * where he sent

both the policy and a proper written notice or request and all that remained to be done were certain formal and ministerial acts on the part of the company, such as indorsement of the change on the policy, and these acts were either not done at all or were done after the death of the insured. Of course * * * where the policy or contract provides for a change of beneficiary with the consent of the company, an attempted change not assented to by the company will not be valid, in the absence of waiver or estoppel, even though the insured has done all that he could to effect the change, the act of the company required not being a mere ministerial one, but rather one involving the exercise of judgment and discretion. When not so provided by the terms of the policy, the consent of the company is not required to render a change of beneficiary valid."

The terms of the policy in this case do not require the consent of the company to change the beneficiary. It is a right reserved by the insured to change the beneficiary whenever he shall please. In the absence of a statute, or a requirement in the contract itself, the consent of the insurer is not necessary to complete a change of beneficiary. Howe v. Fidelity Trust Co., Ky., 89 S.W. 521; Reid v. Durboraw, 4 Cir., 272 F. 99; Equitable Life Assurance Society v. Brown, D.C., 31 F.Supp. 785, loc. cit. 787 (1, 2).

The original beneficiary named by the insured died several months prior to his designation of a new beneficiary, so that at the time of his death there was no beneficiary other than that provided in the policy itself when there was no child or children, in which event it should go to the personal representative.

Evidently the insured had given some thought to the question of what he should do with this policy of insurance, and had written a letter to the defendant Baumgardner in which he discussed his financial condition. In that letter he discussed with her the question of his insurance and the expenses of his funeral in the event of his death. He did not, however, discuss with her in this letter the question of making her the beneficiary.

Where an insured has done all that he could to comply with the provisions of a policy, and all that remains to be done were certain formal and ministerial acts on the part of the company, the principle of equity that regards as done that which

ought to be done will give effect to the intention of the insured by holding that the change of beneficiary has been accomplished. Reid v. Durboraw, 4 Cir., 272 F. 99; Union Mutual Life Ins. Co. v. Lindamood, 108 W.Va. 594, 152 S.E. 321; State Mutual Life Assur. Co. v. Bessett, 41 R.I. 54, 102 A. 727, L.R.A.1918C, 961; Equitable Life Assurance Society v. Brown, supra.

I believe this case falls within the exception of the general rule respecting change in beneficiary, i.e., that equity regards as done that which ought to be done, and that effect should be given to the intention of the insured, and that all was done that was necessary to be done to substantially comply with the provisions of the policy, and that a change of beneficiary was effected.

The provision of the policy that change in beneficiary should take effect only upon its indorsement on the policy by the Society is a provision made for the benefit of the company itself, and being for the company's benefit, the provision is one which may be waived by it, when, as here, the circumstances are such that the beneficiary has acquired no vested interest in the policy. Frakes v. Brotherhood of Locomotive Firemen, Mo.App., 204 S.W. 26; Mutual Life Ins. Co. v. Tuemler, Mo.App., 251 S.W. 727; Dunnavant v. Mountain States Life Ins. Co., Mo.App., 67 S.W.2d 785, loc. cit. 789.

The insurer for whose benefit the provision of the policy was made has not raised the question of substantial compliance, but on the contrary, has paid the proceeds into court and asked that the claimants be required to establish their claims to it. I think it thereby waived such right as it may have had respecting the endorsement of the name of the new beneficiary on the policy.

The facts in Equitable Life Assurance Society v. Brown, D.C., 31 F.Supp. 785, are almost identical with this case, except that in the Brown case the question of whether the application left the possession of the insured prior to his death was not in issue. In that case the insured wrote to the agent who had written the policy, and who resided in a different part of the State of West Virginia, requesting a change in beneficiary, the beneficiary, his wife, having died. He mailed the application to the district office of the company in Wheeling, West Virginia and thereafter

the district office, with knowledge of the insured's death, sent the policy and the application to the home office in New York for endorsement thereon of the new beneficiary. Such endorsement was not made by the company. Thereafter an administrator was appointed, and both the administrator and the beneficiary designated by the insured made demands for the proceeds of the policy, and the company brought an action requesting the claimants to interplead.

Brown died before the policy was forwarded by the district office at Wheeling. In a well considered opinion the District Court held that it was clearly the intention of the insured to name a beneficiary, and that the insured had done all that could reasonably be done, and that nothing remained except the ministerial act of endorsing the policy, and that to all intents and purposes, the beneficiary had been designated, and that the person named was entitled to the proceeds of the policy. The provisions of the policies in that case and in this case were identical.

### Findings of Fact

I. The provisions of the policy were in full force and effect at the time of the death of the insured.

II. That at the time of the issuance of the policy, Leanore W. Pugh, wife of the insured, was designated beneficiary. That the said Leanore W. Pugh died November 19, 1942 and that thereafter there was no named beneficiary in the policy prior to the execution of the application naming a beneficiary on April 10, 1943.

III. That insured executed an application on a form provided by the insurer designating Roberta Baumgardner as beneficiary, and delivered the application and the policy for transmission to the home office of the company for endorsement thereon of the name of the beneficiary, to W. W. Ward, the local representative of the insurer, shortly after 7 o'clock on the evening of April 10, 1943.

IV. The insured was found dead at about noon on the 11th day of April, 1943.

V. There was no evidence indicating the hour of insured's death between the time of the signing of the application naming a beneficiary and the time he was found dead.

VI. That the application and the policy were not mailed at Hays, Kansas, until after the death of the insured, at which time it was mailed to the office of the company at Kansas City, Missouri.

VII. That at the time it was mailed at Hays, Kansas, W. W. Ward, the agent who mailed the application and policy, did not know of the death of the insured.

VIII. That on the day following the mailing of the application and policy, upon learning of the death of insured, Ward notified the office of insurer at Kansas City, where the application and policy had been received.

IX. That thereafter the application and the policy and information of the death of insured were mailed by the Kansas City office to the home office of insurer in New York City.

X. That the name of the person mentioned in the application was not endorsed on the policy by the insurer.

XI. That the insurer paid the proceeds of the policy of insurance into the registry of the court, and requested that the claimants interplead therefor.

### Conclusions of Law

I. That the court has jurisdiction of this action.

II. That the insured intended to name a beneficiary by the execution of an application directed to the company on April 10, 1943.

III. That the insured substantially complied with the provisions of the policy requiring that change of beneficiary shall take effect only upon its endorsement on the policy by executing an application therefor naming therein a beneficiary and delivering the same together with the policy to the local agent of the company for transmission to the home office for such endorsement.

IV. That considering as done that which ought to be done, the action of the insured did designate a beneficiary.

V. That the provisions of the policy respecting endorsement of the change of the beneficiary thereon was for the benefit of the insurer, and that by instituting this suit and paying the money into the registry of the court, the insurer has waived such provision.

VI. That the defendant Roberta Baumgardner is the beneficiary in said policy, and is entitled to the proceeds of the policy of insurance.

Order entered accordingly.