## COLLINS v. UNITED STATES et al.
### No. 3414.

Circuit Court of Appeals, Tenth Circuit.
March 17, 1947.

Writ of Certiorari Denied June 23, 1947.
See 67 S.Ct. 1756.

Louis A. Fischl, of Ardmore, Okl. (Thos. W. Champion, of Ardmore, Okl., on the brief), for appellant.

F. L. Welch, of Antlers, Okl., for appellees A. G. Collins annd Nola Z. Collins.

Cleon A. Summers, U. S. Atty., of Muskogee, Okl., John F. Sonnett, Asst. Atty. Gen., and Searcy L. Johnson, Sp. Asst. to Atty. Gen., (D. Vance Swann, Atty., Dept. of Justice, and Fendall Marbury, Atty., Dept. of Justice, both of Washington, D. C., on the brief), for appellee United States.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

Emma Lee Collins, now McCrummen, instituted this action against the United States and against A. G. Collins and Nola Z. Collins, to recover $10,000, the proceeds of a National Service Life Insurance policy issued to her deceased husband, Warren G. Collins, herein referred to as the insured. The material facts are these: The insured, a single man, was enlisted in the military forces of the United States. He made ap-

66

plication for and received an insurance policy for $10,000 in National Service Life Insurance. He named A. G. Collins and Nola Z. Collins, his father and mother, primary and secondary beneficiaries respectively. Thereafter, on April 28, 1942, the insured married appellant. On the day preceding his marriage, but contemporaneous therewith, he voluntarily executed a change of beneficiary of the above policy, naming his wife, the appellant, as the new beneficiary, and his father and mother as contingent beneficiaries. The change of beneficiary was executed on Veterans Administration printed form No. 336, furnished by the Veterans' Administration, and was prepared for him at his request by Beverly G. Tibbals, a civilian employee in the office of personal affairs at Mather Field, California, where he was then stationed. The information contained in the change of beneficiary was furnished by the insured, and the instrument evidencing the change was executed by him in the office of Beverly G. Tibbals. It was executed in duplicate and both copies were delivered to him by Beverly G. Tibbals.

The insured kept the original copy of the executed form in his personal file with other papers in his home, where he and his wife lived until his death. Sometime in November, 1942, shortly after the death of a student pilot at the field, he took the file in which he kept the original change of beneficiary, removed it therefrom, and showed it to his wife, the appellant. He told her what it was and further told her, "If anything happens to me, give this to your father, he will know what to do with it." Thereupon he replaced the instrument in the file and left the file in the desk in their home, where it remained until after his death. On April 25, 1942, he also executed a will in which he named appellant as the sole beneficiary of the estate. He also showed this to her and then placed it in the file with the change of beneficiary.

The insured was killed while in service, December 12, 1943. Immediately after insured's death, appellant's father went to her home and while looking through the desk found the file containing the change of beneficiary. The next morning appellant gave this file to her father and related what

the insured had told her concerning the change of beneficiary. Appellant returned with her father to his home, taking the file with her. Neither she nor her father sent in the change of beneficiary to the Veterans' Administration until after appellant had had some correspondence with the Veterans Administration and had been advised that insured's father was the beneficiary. Thereafter, on February 24, 1944, she forwarded the change of beneficiary to the Administration, where it was received February 26, 1944. This was the first receipt by the Administration of any notice of change. The reason given for not forwarding the change of beneficiary sooner was that neither she nor her father knew that it was necessary. Both were under the impression that one had already been sent to the Administration, and that the one in their possession was a copy, to be kept by them.

The insured was an officer in the Air Corps and as such had a desk in one of the office buildings at the Army Air Field. In this desk he had a personal 201 file, provided for the personal papers of an officer. Army regulations provided that upon the death of an officer, a summary court officer should be appointed to take charge of the affairs of the deceased officer, inventory the property found in his desk, and send his personal property found in his desk to his next of kin. The summary court officer appointed for this purpose found the carbon copy of the change of beneficiary upon Veterans' Administration Form 336 in the insured's personal 201 file. He sent this carbon copy, together with insured's other personal effects, to appellant. Upon the death of insured, his personal 201 file was not accessible to any one except the summary court officer.

Prior to going into the Army, insured had taken out insurance in a private insurance company, naming his father as beneficiary therein. After the birth of his son, he wrote the company a letter requesting a change of beneficiary to his son and giving his father as contingent beneficiary. He received the necessary papers to effectuate this change from the company, executed them, and returned them to the company. While there was some conflict in the evidence, the trial court found that in-

sured prior to his death made rather frequent references to his insurance, and that his wife was the beneficiary thereof. The court also found that it was the intention, purpose and desire of the insured that appellant be the beneficiary of his insurance, and that he probably thought that he had effected such a change. The court, however, concluded as a matter of law that under the evidence and the law as declared by this court in Bradley v. United States, 143 F.2d 573, appellant had not sustained the burden of proving that insured during his lifetime had effected a valid change of beneficiary. Judgment was accordingly entered for the father of insured. It is from this judgment that this appeal is prosecuted.

 The situation, then, is this—when the insured died, his father was the recorded beneficiary in the policy. The Veterans' Administration had received no notice of a change of beneficiary. The burden therefore rested upon any one claiming as a substituted beneficiary to show that the insured during his lifetime had effected a valid change of beneficiary.[1] Whether appellant met this burden is the only question in this case.

 Insurance policies are contracts between the insured and the company.[2] The parties are free to make any contract they may choose, not prohibited by law,[3] and when once they have made their contract they will be bound thereby, and when the contract is free from ambiguity, the court has no latitude in interpreting or enforcing its provisions. It is only where there is ambiguity in some of the provisions of the agreement that the equitable powers of the court may be invoked in construing the contract in a light most favorable to the insured.[4]

38 U.S.C.A. § 802(g) provides in part as follows: "The insured shall have the right to designate the beneficiary or beneficiaries of the insurance * * * and shall, subject to regulations, at all times have the right to change the beneficiary or beneficiaries of such insurance without the consent of such beneficiary or beneficiaries * * *". The applicable regulation of the Veterans' Administration in force at the time reads in part as follows: "A change of beneficiary may be made by the insured at any time and without the knowledge or consent of the previous beneficiary, except that no change of beneficiary may be made by last will and testament * * *. A change of beneficiary to be effective must be made by notice in writing signed by the insured and forwarded to the Veterans Administration by the insured or his agent. * * *. Upon receipt by the Veterans Administration a valid * * * change of beneficiary shall be deemed to be effective as of the date of execution; Provided, that any payment made before proper notice of designation or change of beneficiary has been received in the Veterans Administration shall be deemed to have been properly made and to satisfy fully the obligations of the United States under such insurance policy to the extent of such payments."

 It has been held without exception that a mere intent to change a beneficiary is not enough. Such an intent must be followed by positive action on the part of the insured evidencing an exercise of the right to change the beneficiary. Where the courts diverge is as to the degree of affirmative action necessary to effect a change. Literal compliance with the provisions of a policy for the change of a beneficiary is not necessary. It is a general rule that where the insured has mani-

---

[1] See Bradley v. United States, 10 Cir., 143 F.2d 573, and cases cited therein.

[2] Chrysler Sales Corp. v. Spencer, D.C., 9 F.2d 674, 679; Alliance Ins. Co. v. City Realty Co., D.C., 52 F.2d 271, 274; 29 Am.Jur., Sec. 126; Cooley's Briefs on Insurance, 2d Ed., p. 962.

[3] Maryland Cas. Co. v. Morrison, 10 Cir., 151 F.2d 772, 775; Travelers Ins. Co. v. Wolfe, 6 Cir., 78 F.2d 78; Whitney v. Union Central Life Ins. Co., 8 Cir.,

47 F.2d 861; 44 C.J.S., Insurance, § 223.

[4] Stroehmann v. Mutual Life Co., 300 U.S. 435, 439, 57 S.Ct. 607, 81 L.Ed. 732; Mutual Life Ins. Co. v. Hurni Packing Co., 263 U.S. 167, 174, 44 S.Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102; Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 492, 52 S.Ct. 230, 76 L.Ed. 416; Order of United Commercial Travelers of America v. Sevier, 8 Cir., 121 F.2d 650, 654.

fested an intent to change a beneficiary and has done everything reasonably necessary to accomplish a change, leaving only ministerial acts to be performed, courts of equity will treat as done that which ought to be done, thus effectuating the intent of the insured.[5]

Here we have more than the expressed intent of the insured to change the beneficiary. We have positive and affirmative action on his part. The insured did everything that was necessary on his part to evidence a change in beneficiary. He obtained the particular form required by the regulation. He had a civilian employee whose duty it was to assist him to fill out the form as required, and signed it. Nothing remained for him to do in order to authorize the insurance company to make the change as soon as the notice came to its attention. The only other thing that remained was to bring the executed change to the attention of the insurance company, and have it record the change of beneficiary on its records.

The very narrow question in this case, then, is whether it was necessary to deliver the executed change of beneficiary to the company or at least mail it in during the life of the insured in order to constitute a valid change of beneficiary. This question must be answered in the negative. The books are replete with cases holding that a valid change of beneficiary was effected although the application for such change was not received by the company until after the death of the insured,[6] and that is so even in cases in which the policy contained a specific provision that the change in beneficiary should not become effective until it had been endorsed by the company in the home office.[7]

The direction by the insured to appellant as to what she was to do with the original of Form 336 in the event of his death was a designation of her as his representative to do whatever was necessary to collect the insurance for herself. It is argued that this made her the insured's agent and that since such relationship is terminated by the death of the principal, her authority to transmit the designation to the insurance company was at an end when the insured died. Her right to assert her claim to the proceeds of the policy, however, does not depend upon the strict technical relationship of principal and agent or upon whether her authority as agent to act terminated with the death of the insured. In the absence of a provision in the policy to the effect that the receipt of the new designation and its endorsement upon the policy or the recording of the change in beneficiary upon the records of the company was a part of a legal change of beneficiary, the change of beneficiary was complete when the insured had substantially complied with the requirements as to the steps to be taken to evidence such a change. This was done by the insured here. He procured the precise form which was required by the regulation, gave the necessary information to the clerk, who was there to aid him, so she could fill in the form, and then in her presence executed the completed designation.

[5] Bradley v. United States, 10 Cir., 143 F.2d 573; Roberts v. United States, 4 Cir., 157 F.2d 906; Claffy v. Forbes, D. C., 280 F. 233; Equitable Life Assur. Soc. v. Baumgardner, D.C., 55 F.Supp. 985; Norris v. Norris, 5 Cir., 145 F.2d 99; John Hancock Mutual Life Ins. Co. v. Douglass, 7 Cir., 156 F.2d 367.

[6] See Roberts v. United States, 4 Cir., 157 F.2d 906; Claffy v. Forbes, D.C., 280 F. 233; Norris v. Norris, 5 Cir., 145 F.2d 99; Kaschefsky v. Kaschefsky, 6 Cir., 110 F.2d 836; Johnson v. White, 8 Cir., 39 F.2d 793; Citron v. U. S., D. C.Col., 1947, 69 F.Supp. 830.
In all of these cases no notice of the new designation was received by the company prior to the death of the insured, yet the change was held valid.

[7] In Equitable Assur. Soc. v. Baumgardner, D.C., 55 F.Supp. 985, the new designation was not mailed to the company until after the death of the insured. The change of beneficiary was held valid notwithstanding a provision of the policy that no change of beneficiary should become effective until it had been endorsed by the company in its home office.
In John Hancock Mutual Life Ins. Co. v. Douglass, 7 Cir., 156 F.2d 367, 368, the notice designating the second wife as the new beneficiary was found in her possession after the insured's death. The validity of the new designation was upheld notwithstanding a provision in the policy that "Such change shall take effect only upon endorsement hereon."

Mailing the form or transmitting it to the Veterans' Administration and recording the change upon its records were ministerial acts which were not necessary steps in a valid exercise of the personal privilege granted by the policy to the insured to change the beneficiary. The new designation was complete when the insured executed the precise completed form provided for such purpose and the Veterans' Administration was bound to recognize it, no matter by whom it was called to its attention.

But, furthermore, the regulation itself recognizes the rights of others than the insured to send in the notice of designation of a new beneficiary after the death of the insured. Unless this construction is adopted, those portions of the regulation providing that the "change of beneficiary shall be deemed to be effective as of the date of execution", and that "any payment made before proper notice of * * * change of beneficiary has been received * * * shall be deemed to have been properly made and to satisfy fully the obligations of the United States under such insurance policy to the extent of such payments" would be meaningless. The latter quotation can mean only that the government shall be liable to the new beneficiary for all future payments after receipt of notice of the change of beneficiary, but that it shall not be liable for payments made to the original beneficiary prior to the receipt of such notice. If the change of beneficiary must be forwarded either by the insured or his agent during his lifetime, what is the purpose of this provision in the regulation? It is common knowledge that payments to beneficiaries under a policy are not made immediately upon receipt of notice of death of the insured. Considerable time intervenes between death and formal proof of claim. Furthermore, this was government insurance and was payable in monthly payments over a long period of time. A reading of the regulations indicates that it contemplates that a number of monthly payments might be made before notice of a change of beneficiary was received. This clearly recognizes the right of others than the insured to send in such notices after the death of the insured, be-

cause a notice mailed in by him ordinarily would reach the company long before proof of death by the original beneficiary could be made.

As pointed out, attempts by an insured to change the beneficiary will be liberally construed if the intent to effect the change is clear and reasonable steps are taken by the insured to bring about such a change. In such a case, technicalities will not be permitted to thwart the express desire of the insured, and a court of equity will treat as done that which ought to be done. If this is so in ordinary commercial insurance, it should be even more so in a case like this. This was government insurance, provided and made available to members of the armed forces by the government. Only members of the armed forces could obtain this insurance. It was made available to them because of the interest the government had in them and those dependent upon them. The government had a paternalistic interest in the members of its armed forces and in the welfare of their families. For these reasons it made this insurance available to them which they could not have obtained otherwise, without any thought of profit; in fact, knowing that it would incur substantial financial loss in writing the insurance. In view of all this, it is unreasonable to conclude that the government intended to encircle the right to change the beneficiary with technicalities and make such a change difficult of accomplishment. It is more reasonable to assume that all the government intended to require was satisfactory evidence of the intent of the insured to change the beneficiary, together with satisfactory evidence showing positive action on his part to effectuate such intent, and that when once this is shown, legal technicalities relating to ministerial acts or perfunctory acts will be brushed aside in order to carry out the expressed will and intent of the insured soldier. This, we think, is clearly borne out by those portions of the regulation adverted to. They clearly indicate that the government did not consider the receipt of notice during the lifetime of the insured soldier as necessary to a valid change of beneficiary, and that it was the intent of the government to recognize such change

after the soldier's death upon receipt of satisfactory proof that during his lifetime he had not only expressed an intent to change the beneficiary but had taken reasonable steps to evidence such change.

But there is yet another reason why the judgment must be reversed. The purpose of a regulation designating the manner in which a change of beneficiary under a National Service Life Insurance Policy should be made is for the convenience and protection of the government, and may be waived by it.[8] The United States filed a brief in this court in which it takes the position that under the law and the regulations it is not necessary that the notice of the change in beneficiary be mailed in by the insured or his agent during his lifetime. The government takes the position that the appellant is the lawful beneficiary and entitled to the proceeds of the policy. Even if it should be held that mailing the notice during the lifetime of the insured was required by the regulation, this requirement was waived by the position the government takes in this case.

The trial court was in error in concluding that the Bradley case, supra, controlled the disposition of this case. In the Bradley case the insured soldier had taken no affirmative steps to bring about a change in beneficiary. He had written no letter requesting such a change, filed no application, nor had he done anything else. The only act relied upon to establish a change in beneficiary was a statement contained in a confidential report which was required of all flying officers, and the only purpose of which was to compile and maintain accurate personal records of all of the officers of the Air Corps. This report was addressed to the United States Army Air Corps. In the report the officer was asked the amount of government insurance and the beneficiary thereof. When he filled out this confidential report, he answered that he had $10,000 government insurance, and that Ann M. Bradley, his wife, was the beneficiary. As pointed out in the opinion, at most this statement did not even constitute an expression of a desire to have the beneficiary changed. At most it indicated a belief or understanding that his wife was the present beneficiary. The difference between those facts and the facts in this case are obvious upon a casual examination.

The judgment of the trial court is accordingly reversed, and the cause is remanded with directions to enter an appropriate judgment for the appellant.

8 Peart v. Chaze, D.C., 13 F.2d 908; Chichiarelli v. United States, D.C., 26 F. 2d 484; Bradley v. United States, 10 Cir., 143 F.2d 573; Johnson v. White, 8 Cir., 39 F.2d 793.