### RAMSAY v. UNITED STATES et al.
#### Civil Action No. 1180–J.

District Court, S. D. Florida,

Jacksonville Division.

July 31, 1947.

**614**

Rhydon C. Latham, of Latham & Elmore, all of Jacksonville, Fla., for plaintiff.

Herbert S. Phillips, U. S. Atty., of Tampa, Fla., by Edith House, Asst. Dist. Atty., of Jacksonville, Fla., for the United States.

David J. Lewis and Emmet Safay, both of Jacksonville, Fla., for defendant Maude Jordan Ramsay.

DE VANE, District Judge.

Plaintiff, Jean Loretta Ramsay, brought this suit against the United States of America and Maude Jordan Ramsay to have herself adjudged beneficiary under a National Service Life Insurance policy issued to John R. Ramsay, Jr., her deceased husband (frequently referred to hereinafter as insured).

The answer of the United States admitted all allegations of the complaint, save and except the alleged change or attempted change in beneficiary and as to these its answer was that it was without sufficient knowledge to form any belief as to the truth thereof.

Defendant, Maude Jordan Ramsay, admitted all allegations of the complaint, save and except that the insured had made the change of beneficiary, as alleged, or had done everything in his power to make the change.

Much of the testimony offered by plaintiff was objected to by counsel for defendant, Maude Jordan Ramsay, on the grounds that it was hearsay, not a part of the res gestae, that the testimony relating to communications and transactions between the insured and plaintiff is incompetent evidence under provisions of Section 90.05, F.

S.1941, F.S.A. Ruling upon these objections was reserved and the court now overrules all objections made by counsel for said defendant to the evidence offered by plaintiff, not heretofore sustained or overruled. The court will give full effect to all the testimony offered by plaintiff and appearing in the transcript of record in the case.

John R. Ramsay, Jr., entered the United States Naval service in 1942 as an Air Cadet. He was stationed at the Naval Air Station at Jacksonville, Florida. On July 9, 1942, he contracted for National Service Life Insurance in the amount of $10,000, naming his mother, Maude Jordan Ramsay, beneficiary. He was commissioned an Ensign in the Flying Corps late in December, 1942, and was killed in line of duty in the South Pacific, September 8, 1944. The insurance was in force at the time of his death and the Veterans Administration, having no record of a change of beneficiary, recognized his mother as beneficiary of the insurance.

The evidence in the case shows that John R. Ramsay, Jr., and plaintiff were married on August 16, 1942, while insured was still a Cadet at the Jacksonville Naval Air Station. It was against Naval regulations for him to marry before receiving his commission as Ensign. The marriage, therefore, was kept secret, and, on December 26, 1942, after insured had received his Ensign's commission, he and plaintiff remarried. Of the marriage one child, Sharon Jean Ramsay, was born on September 27, 1943.

As stated above, the Veterans Administration has no evidence whatever in its files showing a change of beneficiary during the lifetime of the insured. Plaintiff's case rests upon the allegation that insured did everything in his power to effectuate a change of beneficiary and that upon proof thereof, by competent evidence, the court, as a court of equity should and will, consider that done that should have been done and will not defeat the intent of the insured, simply because through ministerial neglect or oversight the change of beneficiary was not affected prior to insured's death.

In support of this allegation plaintiff testified that at the time of her marriage to

insured, on December 26, 1942, he was on a short leave of absence granted him immediately upon his graduation and receipt of his Ensign's commission; that he reported to the Naval Air Station for duty on December 28, 1942, and upon his return home on that afternoon he informed her, in the presence of her mother, that he had made application for all allowances permitted a married officer; had made allotment to her of a portion of his pay; had named her as beneficiary for Naval benefits and had changed his Government insurance to name her beneficiary. Plaintiff's mother testified she was present when insured made the above statements to his wife and that she heard them all.

Plaintiff also introduced in evidence three letters; one from plaintiff to insured and two from insured to plaintiff. Plaintiff's letter bears date of October 17, 1943, and in this letter she mentioned she had not received the insurance certificate and asked her husband about the matter. In reply to this letter, under date of November 15, 1943, insured stated:

" * * * About my ins. certificate, I don't know why you have not received it for I filled out the transfer paper properly (which I put your given name on). I will write to the Veterans Administration & find out. And I'm not mad about you asking me for I feel just as you do; that we can say anything or rather discuss anything with each other anytime."

Again on June 22, 1944 insured wrote plaintiff as follows:

"If I am ever missing or killed you are supposed to keep getting your allotment for six months thereafter. Also my insurance is spread over a period of years so you will get a certain amount each month instead of all at once. I don't know how it is worked out nor what the amt. is each month. All I know is that it is paid in monthly installments."

Plaintiff also called as witnesses Lt. C. D. Reeves and Ralph Hutchins, a former Naval officer. Both of them had been on duty with insured in the Pacific Area. Reeves testified to a conversation that took place in B.O.Q. in Perth, West Australia in early December, 1943. He stated their discussion on this evening was about the severity of a raid they had just completed. He further testified that the plane he was in was hit by anti-aircraft and Jap night fighters and that he made the statement to his brother officers present that his wife had almost collected his insurance, whereupon Lt. Ramsay had said that he didn't know whether or not his wife would receive his insurance because, although he had changed it to his wife, apparently the Veterans Bureau did not have his change of beneficiary properly recorded; that he had written about the matter to get it straightened out but had not received any answer or confirmation of the change.

Hutchins testified that he and Lt. Ramsay talked about their insurance at Pearl Harbor when they were both on their way to combat Areas; that both of them had received word quite recently that they had become fathers and that Lt. Ramsay stated he had changed his insurance naming his wife as beneficiary.

Since the closing of the case, counsel for plaintiff has filed a Motion to re-open the case for the receipt of newly discovered evidence. The newly discovered evidence is that of a third Naval officer who served with Lt. Ramsay in the South Pacific Area. The statement of this officer, contained in the Motion to re-open the case, is, in substance, the same as that of Reeves and Hutchins and as this proffered newly discovered evidence is merely cumulative the case will not be re-opened to receive it.

Plaintiff also offered in evidence a photostatic copy of the Official Service Record Jacket of Lt. Ramsay. This Jacket shows that on July 9, 1942, Ramsay designated Mr. and Mrs. J. R. Ramsay, parents, as next of kin; that on December 28, 1942, he designated Jean Loretta Frink, his wife, as next of kin. The Jacket also contains photostatic copies of application for all the allowances for dependants permitted a married officer; an allotment to plaintiff of a portion of his pay and a designation of her as beneficiary for Naval benefits accruing in case of death. The only important paper absent from the Jacket is a designation of change of beneficiary on the insurance policy.

Plaintiff also introduced in evidence a statement from Cletus M. Stack, Supervisor of the Officers Payroll Section of the Disbursement Office at the Naval Air Station, Jacksonville, Florida, who had charge of the Official Service Record Jackets of officers stationed there. Stack's statement is to the effect that his office was not permitted to accept a request for change of beneficiary of insurance, but required the officer concerned to mail the request himself, but the office suggested to the officer given a copy of the form on which the request was made, to file with his office for inclusion in the Officer's Service Record Jacket, a copy of the request for change of beneficiary.

Defendant, United States of America, offered no testimony in the case.

Defendant, Maude Jordan Ramsay, not only submitted considerable evidence in support of her answer denying that Lt. Ramsay did change the beneficiary of his insurance during his lifetime, but also displayed an openly hostile attitude toward plaintiff at the trial. She introduced in evidence the National Service Life Insurance policy naming her as beneficiary as well as the envelope in which this policy was mailed to her by the Veterans Administration. The envelope bears the post-mark date of February 19, 1943. She testified that her Son was at her home on the day she received this insurance policy; that he opened the envelope and examined the policy and that it was placed by him in the piano stool where it remained until after his death. She further testified that her Son remained in Jacksonville until April, 1943, when he was sent to the Panama Canal Zone, returning in July of the same year. She further testified he went to the West Coast in August and was sent to the Pacific Area shortly thereafter.

Maude Jordan Ramsay further testified that her Son continued to make his home with his parents until he went over-seas and that at no time during his lifetime did her Son say anything about changing the beneficiary in his insurance policy. Plaintiff and her mother contradicted the testimony of Mrs. Ramsay as to where insured lived after plaintiff's marriage to him. Mrs.

Ramsay also testified that plaintiff requested her to write her Son shortly prior to the birth of their baby about his insurance and that she did so and received a letter in reply, which she destroyed shortly after receiving it, but after showing it to her husband and daughter. She gave as her reason for destroying the letter, her unwillingness to hurt her daughter-in-law's feelings by letting her see the contents of the letter. The court refused to permit either Mrs. or Mr. Ramsay to testify as to the contents of that letter.

Upon the evidence submitted, the court finds that the law will not permit it to consider that done which should have been done, for the evidence shows too clearly that the insured could never bring himself to the point of changing the beneficiary of his insurance from his mother to his wife.

As stated above, the evidence shows that plaintiff and insured were married more than four months before they had a right to be married under Naval regulations and during this period of time insured could do nothing for his wife in so far as service benefits were concerned. Plaintiff did not controvert the testimony of Mrs. Ramsay, the mother, that Lt. Ramsay remained in Jacksonville until April, 1943, and returned to Jacksonville for approximately a month before leaving for the West Coast to be sent into the Pacific Area. It would have been very easy for the insured at any time between February, 1943, and his departure from Jacksonville to the Canal Zone and to the West Coast to have taken the certificate of insurance and sent it to the Veterans Administration and had a change of beneficiary entered thereon, if he had desired or dared to do so. The record contains no evidence upon which the court would be justified in holding that insured did everything in his power to effectuate a change of beneficiary.

Plaintiff relies upon Roberts v. United States, 4 Cir., 157 F.2d 906 and Collins v. United States, 10 Cir., 161 F.2d 64, to sustain her right for a judgment in this case. Because of plaintiff's reliance upon these cases the court has set out above, in considerable detail, the evidence submitted by plaintiff to support her case. But this case

does not have the evidentiary facts, present in the Roberts and Collins cases, to warrant the court in finding and holding in favor of plaintiff.

In the Roberts case a fellow officer was present and witnessed Robert's execution of the request changing the beneficiary and testified to that effect at the hearing. In the Collins case the execution of the change in the name of beneficiary was admitted. It merely was not received by the Veterans Administration until after the death of the insured.

Not only has plaintiff failed to carry the burden of proof placed upon her by the law to show that insured did everything in his power to effectuate a change in beneficiary, but the evidence more persuasively shows that insured, either by choice or responding to the influence of his mother, took no steps to change his beneficiary.

Upon the evidence the court finds and holds that plaintiff is not entitled to the relief sought in this case.

A final judgment will be entered in conformity with this memorandum decision.