## ROBERTS v. UNITED STATES et al.

### No. 5508.

Circuit Court of Appeals, Fourth Circuit.

Nov. 11, 1946.

Russell T. Bradford, of Norfolk, Va. (Wailes Hank, of Norfolk, Va., on the brief), for appellant Margaret Elizabeth Roberts.

Fendall Marbury, Atty., Department of Justice, of Washington, D. C. (Harry H. Holt, Jr., U. S. Atty., Llewellyn S. Richardson, Asst. U. S. Atty., and John F. Sonnett, Asst. Atty. Gen., both of Washington, D. C., Searcy L. Johnson, Sp. Asst. to Atty. Gen., and D. Vance Swann, Atty., Department of Justice, of Washington, D. C., on the brief), for the United States.

James G. Martin, of Roanoke, Va. (Fred J. Dean, Jr., of Norfolk, Va., on the brief), for appellee Joe Johnson Roberts.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This suit was brought to recover from the United States the proceeds of a National Service Life Insurance policy in the amount of $10,000 on the life of Joe William Roberts, an officer in the Air Corps of the United States Navy who lost his life on active duty in the late war on January 10, 1944. The insurance was claimed by Margaret Elizabeth Roberts, the widow of the insured, and also by Joseph Johnson Roberts, his father, and the latter, as a

party in interest, was joined as a defendant. The insured entered the armed services of the United States on February 23, 1942, and was granted the insurance on May 14, 1942, at which time he designated his father as sole beneficiary. He married Margaret Elizabeth Roberts on December 19, 1942, and on or about December 22, 1942, according to testimony offered on her behalf, changed the beneficiary in the policy and designated her in place of his father.

On May 19, 1944, she filed a claim for the insurance with the Veterans' Administration but on September 11, 1945, the claim was denied. In the meantime the father had filed a claim for the insurance with the Veterans' Administration, and since it had no notice of the adverse claim, his claim was recognized on April 20, 1944, and payment to him of monthly instalments in the sum of $73.20 each, effective January 10, 1944, was begun. Certain payments were made to him prior to the institution of the present suit which was brought by the widow against the United States and the father. A jury trial was waived and hearing was had before the District Judge who rejected the widow's claim and entered a judgment wherein it was held that the father was entitled to the full amount of the insurance and that his attorneys were entitled to 10 per cent thereof for their services, and that the father should pay to the attorneys an amount equal to 10 per cent of the payments already received by him, and that the balance should be paid by the United States at the rate of 10 per cent of succeeding monthly instalments when and as made to the beneficiary.

The testimony on behalf of the widow may be summarized as follows: The officer and his wife had known each other from childhood, attended the same high school and became engaged in August, 1941, intending to be married after he had finished his college course. The war intervened. The insured went into the Naval service, received his commission on December 8, 1942, and married the complainant on December 19, 1942, in Jacksonville, Florida, near which city he was stationed. A few days later the young couple, together with William W. Perry, Jr., a brother officer in

the same service, and his wife, who had also been married on December 19, 1942, drove to the city in order to change the beneficiaries named in their insurance policies and in other documents in favor of their wives. The other documents related to a gratuity payment of six months' additional pay in case of death and a bonus of $500 after the completion of one year's service. Leaving their wives to do Christmas shopping, the two officers went to the office where the officers' records were kept at the Administration Building of the Naval Air Station and stated their wishes to the clerk in charge.

Each of the men was furnished a set of forms and instructed to fill them out in pencil, and also to sign a set of blank forms upon which the clerk in charge agreed to enter the information furnished by the officers, and then to take charge of the papers and put them in the proper channel. The two men stood side by side at the counter and compared their entries as they were engaged upon identical work. Perry saw Roberts change the beneficiary in the several documents in favor of his wife.

This testimony was corroborated by Mrs. Perry and Mrs. Roberts to the extent of saying that the trip was undertaken for the stated purpose of making the newly wedded wives the beneficiaries of the advantages offered by the United States.

The designation of Mrs. Roberts as beneficiary in the insurance policy was not found in the Veterans' Bureau. A confidential form was found in the records of the Navy Department and produced at the request of the Veterans' Administration. It had been placed in a sealed envelope in accordance with the regulations, to be opened only upon the death of the officer. It consisted of a printed form signed by the insured dated December 15, 1943, wherein he gave the name and address of his wife and stated that he had $10,000 of Government insurance of which his wife was the beneficiary. Another copy of this confidential form dated September 24, 1943, in the handwriting of the insured but not signed, was produced in evidence. It also contained the information that the insured had $10,000 of Government insurance of which his wife was the beneficiary. This

paper was found amongst the effects of the insured after his death. In addition there was produced a card in the insured's handwriting, which was received by the wife from the commander of the squadron after her husband's death, which stated that the wife was the beneficiary of the insurance. This was an official record kept with the records of the squadron from the entry of the officer therein until his transfer. Finally, there was produced in evidence a beneficiary slip, dated December 21, 1942, and witnessed by Perry, in which Roberts designated his wife as beneficiary of the bonus of $500 in case he completed one year of active service.

Two beneficiary slips signed by Perry in favor of his wife were also produced. The first, for the $500 bonus, was dated December 21, 1942, and was signed by Perry and witnessed by Roberts. The second was for the gratuity of six months' pay in case of Perry's death from wounds or disease in the service. This form, dated December 19, 1942, was signed by Perry and purported to have been subscribed and sworn to before a notary on December 24, 1942. Perry was quite positive, however, that he did not sign this form either on December 19, the date of his marriage, or on December 24, but that this form was signed after his marriage at the same time that the other forms were signed. He was quite positive that both he and Roberts signed the same kind of forms and designated their wives as beneficiaries in each, and delivered all of them to the clerk in charge in the officers' record room to be forwarded through the proper channels.

The opposing testimony on behalf of the father was in substance and effect as follows: The parents of the insured were elderly persons of small means, who lived on a small unproductive farm near Soddy, Tennessee. The father earned $113.80 per month for driving a school bus which he owned. He assisted in paying for the education of his son at college to some extent, but the cost thereof was paid largely through work performed by the son himself. The policy of insurance was delivered to the father before the marriage of the son. The latter never said anything about the policy to his father.

In September, 1943, while the insured and his wife were visiting his parents, the mother, the insured and his wife were sitting on the porch of his parents' residence when an insurance agent came to collect the premium on a small life insurance policy which the mother had taken out on her son's life and which netted her $53 after her son's death. The son expressed surprise that his mother was keeping up this small policy and asked her to drop it since he had a policy for $10,000. The agent objected to the relinquishment of the policy and the son said that he would pay the premium if she desired to keep it up but she refused this offer and paid the premium. Previously the mother had told the son after his marriage that the policy had been received and he expressed a desire to see it at some time. No other conversation about the policy took place between them. The judge stated in his oral opinion delivered at the close of the testimony that in the conversation which took place when the insurance agent called, the insured said to his mother that his large insurance policy "would take care of them." The stenographic report of the mother's evidence does not contain this statement.

A brother of the insured's mother, who was employed by the Telephone Company in Knoxville, Tennessee, testified as to two conversations he had with his nephew in regard to the insurance policy, one conversation before and one after the insured's entry into the service. The insured lived with his uncle while he was working and going to college in Knoxville. In the first conversation the insured told his uncle that he desired to go into the Air Corps and that he was going to get married. The uncle tried to dissuade him from marriage saying that his parents had done everything for him and that if he were married and then killed, his wife would get the insurance. The insured replied that that was taken care of whether he came back or not, meaning that he would have the insurance made out in his parents' name. The second conversation took place in September, 1943, at the insured's home after his enlistment and marriage. At that time, according to the testimony of his uncle, he said that when he got back from the war he

would fence his father's farm and put in white faced cattle for his father, and that his insurance was made out to his father, and that whether he came back or not his parents would be taken care of.

■ It will be seen that the judgment below rests upon the absence of the change of beneficiary from the Government's files and upon the testimony of the uncle as to his conversations with the insured. It seems clear to us that these factors are insufficient to outweigh the clear and undisputed written evidence in the insured's admitted handwriting that he had designated his wife as beneficiary of the insurance policy, especially since these writings are supported by the disinterested testimony of the brother officer who assisted the insured to change the beneficiary and saw him execute the document and deliver it to the clerk at the Naval air base. The testimony of the officer was taken by deposition since he feared he would jeopardize his employment if he left his place of business in Macon and went to Norfolk for the trial; but the visit ·of the two couples to the air base for the specific purpose is corroborated by the three survivors, and the recollection of the brother officer is so explicit and circumstantial that we think it ought not be rejected.

Moreover, it cannot be disputed that both officers executed the beneficiary slip for the bonus in favor of their wives on December 21, 1942, two days after they were married, because the documents were produced. The discrepancy in the dates in other papers and the failure of the change of beneficiary to reach its destination is easily understood when one considers the volume of business transacted at military posts and the character of the administrative organization thrown together to meet the emergency of war. Whatever doubts are engendered in the case are allayed by the unquestioned authenticity of the documents signed by the insured after his marriage in which he indicated that he had actually made the necessary change long before the present dispute arose. These papers manifest the normal desire of a recently married man to protect his wife, and lead us to the clear conviction that the findings below were erroneous in this respect and should be reversed.

■■ We are in accord with the views expressed in Bradley v. United States, 10 Cir., 143 F.2d 573, where it is said that in war risk insurance cases involving change of beneficiary the courts brush aside all legal technicalities in order to effectuate the manifest intention of the insured; and that if he manifests an intent to make a change and has done everything reasonably within his power to accomplish his purpose, leaving only ministerial acts to be performed by the insurer, the courts will treat that as done which ought to have been done and give effect to the insured's will. In the pending case, we have found that the insured not only expressed his intention to change the beneficiary in the policy, but also set in motion the machinery devised by the United States to accomplish the desired result. In this way he performed the affirmative act for the lack of which the majority of the court in the Bradley case concluded that the change of beneficiary had not been accomplished. Since such an act was performed here, we have no occasion to consider the view expressed by Judge Phillips in his dissenting opinion in that case that the statement in a confidential report of an officer that he has designated his wife as beneficiary is itself sufficient to effectuate the change.

Since the judgment in this case must be reversed, we have no occasion to consider the point raised by the United States in its appeal that that part of the judgment which relates to the payment of attorneys' fees conflicts with § 617 of the National Service Life Insurance Act of 1940, as amended by § 6 of the Act of July 11, 1942, 56 Stat. 659, 38 U.S.C.A. § 817, which, in the event of a disagreement as to a claim for insurance, incorporates the provision of § 500 of the World War Veterans' Act of 1924, as amended by § 17 of the Act of March 4, 1925, 43 Stat. 1311, 38 U.S.C.A. § 551. It is pointed out that the judgment directed the father to pay to his attorneys 10 per cent of the amount received from the Veterans' Administration before the dispute arose, while the statute limits the fee to 10 per cent of the "amount recovered" to be paid by the Veterans' Adminis-

tration out of the payments to be made under the judgment.

The judgment of the District Court in the pending case will be reversed and the case remanded in order that a judgment in favor of the widow may be entered, and that such further proceedings may be taken as may be necessary.

Reversed and remanded.