**UNITED STATES of America,**
**Plaintiff,**
**v.**
**Nettie WILLIAMS et al., Defendants.**
**Civ. No. 813.**

United States District Court
S. D. West Virginia,
Huntington Division.
Sept. 29, 1956.

Duncan W. Daugherty, U. S. Atty., and Daniel C. Robinson, Asst. U. S. Atty., Huntington, W. Va., for United States.

Bias & Bias and Randolph Bias, Williamson, W. Va., for defendant Nettie Williams.

J. Brooks Lawson, Williamson, W. Va., for defendant Frances Marie Williamson.

HARRY E. WATKINS, District Judge.

This is a contest between the wife and mother of a deceased soldier to determine who is entitled to the proceeds of a National Service Life Insurance policy issued to him.

Saylor Williamson, Jr., the insured, entered upon active duty with the United States Marine Corps on April 4, 1951. He was granted $10,000 National Service Life Insurance. At the time the insurance policy was issued the insured was unmarried and he designated his mother, Nettie Williams, principal beneficiary, and his sister, Nettie Ann Scott, contingent beneficiary. On April 4, 1951, upon entering service, the insured executed D. D. Form 93, entitled "Record of Emergency Data for Armed Forces of the United States", on which he designated his mother to be the recipient of his gratuity pay.

On December 27, 1951, while insured was home on leave he married Frances Mancis. Approximately three days after the marriage the insured returned to duty for overseas assignment to Korea.

In a letter, written on January 22, 1952, by the insured to his wife, he noted that the wife had asked him if he could have the beneficiary of the insurance changed, and he informed her that it could be done easily, and said, "It will go to you now * * *".

On February 11, 1952, while on the sea en route to Korea, the insured executed another D. D. Form 93 wherein he designated his wife to receive the gratuity

pay in the event that he was missing in action, or by other military circumstances was unable to transmit funds to his dependents. D. D. Form 93 contains the following subhead, "Information included on this form does not designate or change beneficiaries of life insurance policies". There is no way of knowing whether or not the insured read this subhead or was informed of its significance. A search of the pertinent records of the Veterans Administration and of the service department fails to disclose the usual form of change of beneficiary duly executed by the insured.

In a letter dated the next day, February 12, 1952, the insured informed his wife that he had checked his record book on the previous day to make sure that she had been made the beneficiary of the insurance and said that it was taken care of. The insured stated in the letter that they were eleven and one-half days out at sea and were on their way to Korea.

After serving his tour of duty the insured was honorably discharged on April 3, 1954, and returned home to his wife. They were a devoted couple and continued to live together until the insured's death on December 24, 1954. They wrote to each other nearly every day while he was in the service. They were married very young, she being 16 and he 20 years of age. She is represented in this action by a guardian ad litem appointed by the Court. They have one child born a few months after the insured's death. The mother objected to their marriage because she believed the girl was marrying her son to get his insurance, and also because she thought they were too young. For a while the mother would not talk to her son and they ran away and were married.

At the trial the wife stated that she and the insured discussed the insurance after his discharge and decided to keep it in effect. They both worked and the premiums were paid out of their joint earnings. The wife testified that on one occasion the insured told her that she would receive $17,000 in case of his accidental death. During the course of the

trial it developed that in addition to the insurance in issue the insured carried approximately $7,000 commercial insurance through his employment. In addition to the wife's testimony we have the testimony of two other witnesses to the effect that the insured thought that the insurance in question would go to the wife. Claude E. Sutton, guardian of the insured's wife, and his wife, Dorothy Sutton, half sister of the insured's wife, both testified that insured stated in their presence that if he were to get killed his wife would get $17,000.

From this evidence it is apparent that the insured intended to change the beneficiary of his National Service Life Insurance from his mother, Nettie Williams, to his wife, Frances Marie Williamson, and thought he had done so when he checked his records on February 11, 1952 and filled out the second D. D. Form 93, and continued to think he had done so.

On the other hand there is the testimony of Ralph G. Williamson, brother of the insured, that shortly after the marriage took place, perhaps the next day, insured and his wife visited him in his home and at that time insured told him that he was not going to change the beneficiary on his insurance policy from his mother to his wife. The mother and father both testified that while the insured was home on leave he told them he was not going to change the beneficiary. Giving to this testimony the greatest weight, it does not overcome the other evidence in the case as to the intention of the insured at a later date, and has very little significance in the light of the evidence showing that the insured thought that the wife was the beneficiary.

■■■ The cases are unanimous that in war-risk insurance cases involving change of beneficiary the courts will brush aside all legal technicalities in order to effectuate the manifest intent of the insured; and if he manifests an intent to make a change and has done everything reasonably within his power to accomplish his purpose, leaving only ministerial acts to be performed by the

insurer, the courts will treat that as done which ought to have been done in giving effect to the insured's intent. Roberts v. United States, 4 Cir., 157 F. 2d 906, certiorari denied 330 U.S. 829, 67 S.Ct. 870, 91 L.Ed. 1270; Bradley v. United States, 10 Cir., 143 F.2d 573, certiorari denied 323 U.S. 793, 65 S.Ct. 429, 89 L.Ed. 632; Mitchell v. United States, 5 Cir., 165 F.2d 758, 2 A.L.R.2d 484. The cases are also unanimous that a mere intent to change a beneficiary is not enough. Such intent must be followed by some affirmative act evidencing an exercise of such right. Bradley v. United States, supra; Roberts v. United States, supra. Where the courts differ is as to the degree of affirmative action necessary to effect the change. Collins v. United States, 10 Cir., 161 F.2d 64.

 The basic question involved in every suit of this type is whether the intent to change the beneficiary has been manifested to a sufficient degree by the insured. No two cases are alike. It is necessary to determine upon the particular facts of each case the degree of affirmative action necessary to effectuate a change of beneficiary. The burden of proof rests upon the one who makes the claim as substituted beneficiary. Cotter v. United States, D.C.Md., 78 F.Supp. 495. In the Cotter case Judge Coleman very aptly pointed out, at page 499, "In short, the tendency of the courts is and should be to treat soldiers in such matters with special indulgence. They are removed from their homes, from their normal occupations and from opportunity to attend to ministerial acts with the same degree of promptness and efficiency that would otherwise be afforded. Also, they have little or no choice with respect to what means they shall adopt for effectuating their intent in matters of insurance, and must rely upon the information given them by those in authority in their particular service unit. Thus, if they are told or are given reasonable ground for believing that if they do a certain thing that is all that is necessary to effectuate their intent, the law will treat their conduct in this respect as adequate even though not in strict compliance with the statute and regulations issued pursuant thereto."

At the request of counsel the decision in this case has been delayed to await the outcome of a petition to the Supreme Court for a writ of certiorari in the case of Aguilar v. United States, 9 Cir., 226 F. 2d 414. Certiorari was denied May 28, 1956, 351 U.S. 955, 76 S.Ct. 852. The facts in that case are strikingly similar to this case. The father was sole beneficiary of a National Service Life Insurance policy on his unmarried son. The son came home on a furlough, was married, and told his wife and others that he was going to make her the beneficiary of his insurance. The insured asked his brother, a veteran, how to make the change of beneficiary. On the eve of going overseas he wrote her as follows: "I straightened out everything today. I changed everything to your name. For instance my G. I. insurance." And again, the insured wrote his wife: "You don't have to fill out any papers at all, cause I have straightened everything out. You will start getting a check next month." There was no other evidence of an affirmative act on the part of the insured to change the beneficiary. There was no proof that the veteran had actually gone to the office the day before he wrote the letter and signed a paper which he believed to effect a change in beneficiary, as in the present case. In the present case we have not only the letter of the veteran dated February 12 stating that he had gone "yesterday" to make sure that his insurance was in his wife's name, but we have in evidence his service record which corroborates his statement that he was not only in the office on February 11, but had signed his name to a paper relating generally to his affairs should he be killed in action.

The issue in the Aguilar case was whether the veteran had done an affirmative act sufficient to effectuate a change of beneficiary. The trial court found that the statements in the letters showed that the insured had taken such affirmative action. The Court of Appeals af-

firmed, and stated on pages 415 and 416 of 226 F.2d as follows:

"In the letters written by the veteran we think there is evidence of a past act which is of much greater dignity than the recorded statement of the veteran in the Kendig case [Kendig v. Kendig, 9 Cir., 170 F.2d 750]: The statements in the letters as to changing everything to appellee's name, are buttressed by the fact that the veteran had knowledge as to what he was required to do in order to effectuate the change of beneficiary. The veteran was on the threshold of a trip overseas and a long separation from his wife was in prospect. That he had deep affection for and concern for the welfare of his bride is evidenced by his statements and written word. This concern was expressed to near relatives on the night of his marriage. Under the circumstances it seems quite natural that he would take the first opportunity to insure her protection. He had asked his brother how to go about doing so and soon thereafter reduced to writing a statement that he had done so. No more competent evidence of an affirmative act having been taken could have been produced short of the production of a written instrument containing the change. The production of evidence of this dignity, the courts have said, is not required, if other competent evidence convinces the trier of the facts that such an instrument at one time was executed."

In the pending case, the insured not only expressed his intention to change the beneficiary of the policy and promised his wife to do so, but subsequently checked the record books, secured and executed a form designating his wife as the one to receive his funds in the event he was missing in action or by other military circumstances was unable to transmit funds to his dependents. This form was executed aboard ship approximately ten days out at sea on the way to Korea. It goes without saying that men aboard a crowded troop transport on the way to battle zones would not be in the position to attend to such matters with any degree of care and efficiency, and the presence or lack of proper forms with regard to the purpose to be accomplished, and the care and attention given to such forms and records is apt to be subject to a state of confusion and disorder.

At any rate we know that on January 22, insured intended to change the beneficiary and promised to do so, and on February 11, after checking the records for that purpose, signed a paper with intent to change his beneficiary. Then on February 12, the insured wrote his wife that he had checked to make sure that she had been substituted as beneficiary and that it was fixed up. In addition to these facts, the insured, after he was discharged, indicated on various occasions that he intended his wife to be the beneficiary. The insured and his wife both thought that the wife was the beneficiary and paid the premiums out of their joint earnings. The Court finds that the insured not only intended to make his wife the beneficiary of his insurance policy, but that he thought he had done everything necessary to accomplish such change. The courts have generally given effect to the intention of the insured wherever the intention is supported by some affirmative act on his part. The affirmative act of going to the office and signing a paper with the intent to change his beneficiary is supported not only by the statements in his letters but by uncontradicted proof that he was in the office on the date stated by him and signed a paper. The next day he made record of the date of that visit in a letter to his wife in which he stated why he had gone there, and what he thought he had accomplished. The insured intended to make a change of beneficiary and did everything reasonably within his power to carry out such purpose, save only ministerial acts, and this case falls squarely within the rule that the law will treat that as done which ought to have been done and will give effect to the intent of the insured. The insured was an

uneducated country boy as is shown by his writing, spelling and expressions in his letters, but his intent is clear.

Form 93, signed by the insured, was the successor to W. D., A. G. O. Form 41. A number of cases have been before the courts in which Form 41 was used during World War II to effectuate a change of beneficiary, although it was not intended for that purpose. In all of those cases, the courts have held that the execution of this form for this purpose was sufficient for a valid change of beneficiary if executed with that purpose in mind. Boring v. United States, 10 Cir., 181 F.2d 931; Rosenschein v. Citron, 83 U.S.App. D.C. 346, 169 F.2d 885; Shapiro v. United States, 2 Cir., 166 F.2d 240. One case contra is Coleman v. United States, 85 U.S.App.D.C. 145, 176 F.2d 469, where the court found no intent to change beneficiaries. Form 41 was designed by the War Department for designation by the serviceman of the person whom he desired to receive six months' gratuity pay. In the case before this Court, D. D. Form 93 carries across the top the statement that it is not for the purpose of changing life insurance beneficiaries. The argument that insured signed Form 93 and intended it to make his wife beneficiary of his insurance is, therefore, weaker than

in the cases involving Form 41. Nevertheless it is plausible to assume that in a crowded troopship the insured could have been rushed into signing the form without fully understanding it, or the proper forms may not have been available on the ship. In any event, insured's letters indicate that at the time he examined his personnel records, either he executed the proper form to change beneficiaries, or he executed this Form 93 with that intent. Either act is an affirmative act carrying out insured's manifest intent to make the change, sufficient to convince this Court that insured did everything reasonable under the circumstances to effectuate a change of beneficiary to his wife.

Form 93 which insured executed on February 11, 1952, is not the usual printed form provided by the Defense Department, but is a typewritten facsimile, perhaps mimeographed. This may be taken as indication that the troopship did not have a complete supply of forms to enable the troops aboard to straighten out their personal affairs prior to landing in Korea. Further, the blanks in this form are typed in, not written by insured, and there are some glaring errors. Two of the items on that sheet are reproduced below:

\* \* \* \* \* \* \* \* \*

5. SPOUSE (Full Name) Address (Number, Street, City and State

Not married

\* \* \* \* \* \* \* \* \*

IN THE EVENT THAT I AM LISTED AS MISSING, OR BY OTHER MILITARY CIRCUMSTANCES AM UNABLE TO TRANSMIT FUNDS TO MY DEPENDENTS, IT IS MY DESIRE THAT

| 10. Full Name | RelationShip |
|---|---|
| Francis WILLIAMS | Wife |
| ADDRESS (Number, Street, City and State | Recieve Each Month |
| Delbarton, West Virginia | 100 % of my Pay |

\* \* \* \* \* \* \* \* \*

It is to be observed from the above items that the same sheet of paper first indicates that insured was unmarried, then states his wife is to receive his back pay, misspelling her given name and using the wrong surname for Frances Williamson, his wife. These obvious inconsistencies indicate that the paper was drawn up and executed with little care and show clearly that the insured did not understand what he had actually signed.

The case of Littlefield v. Littlefield, 10 Cir., 194 F.2d 695, is cited by counsel for the mother for the proposition that letters from an insured are not, alone, sufficient evidence of an affirmative act to carry out an intention to change beneficiaries. The facts in that case are distinguishable from the case at bar. In the Littlefield case, the wife was the named beneficiary of the government insurance policy. Proof was offered but rejected by the trial court to show the mother had advised the insured of certain facts which, if true, would constitute good reason for the insured to desire to change his beneficiary. Three letters were admitted in evidence. One dated July 10, 1944 from a camp in Mississippi, and another dated October 17, 1944 from England, both indicated the insured's manifest intent to make his two children the principal beneficiaries, the second letter stating he had not done so but was going to change beneficiaries "this week". A third letter, dated Nov. 11, 1944, from a noncombat area of Belgium, stated that on the day before he had changed the beneficiary to his father, "so he can see that the kids get their share." Insured's mother had later been named legal guardian of the two children, and the contest was between the father, the mother in her guardian capacity, and insured's wife. The trial court, finding no affirmative act carrying out any intent indicated by those letters, held in favor of the wife, and the Circuit Court affirmed. It can be observed that under those facts, any finding of a change of beneficiary would be purely speculative, inasmuch as the letters themselves were conflicting as to insured's intent. In the case at bar, however, all the letters in evidence are consistent in showing insured's intent to change beneficiaries to his wife, and his belief that he had done all that was necessary to effect that change. Furthermore, in the Littlefield case reliance was placed on the letters alone to show an affirmative act, whereas here we have proof of an affirmative act independent of the statements in the letters.

In Roberts v. United States, supra [157 F.2d 909], Judge Soper stated:

"In the pending case, we have found that the insured not only expressed his intention to change the beneficiary in the policy, but also set in motion the machinery devised by the United States to accomplish the desired result. In this way he performed the affirmative act for the lack of which the majority of the court in the Bradley case concluded that the change of beneficiary had not been accomplished. Since such an act was performed here, we have no occasion to consider the view expressed by Judge Phillips in his dissenting opinion in that case that the statement in a confidential report of an officer that he has designated his wife as beneficiary is itself sufficient to effectuate the change."

In the case at bar it is not necessary to rely only upon the statements in letters to show an affirmative act, as there is here independent evidence of such affirmative act, not present in the Bradley case or the Aguilar case.

In a similar case, Pope v. Smalley, 6 Cir., 229 F.2d 349, a Marine Corps enlisted man was unmarried when he designated his sister as beneficiary of his National Service Life Insurance policy, then later married and went overseas into combat. The facts of that case parallel those of the case at bar in several respects. In both cases a careful and thorough search of the records of both the Veterans Administration and the Marine Corps failed to disclose that the insured had executed a change

of beneficiary form, but those records did disclose that insured had executed an emergency data document providing that the wife was the person to be notified in case of emergency, and that she was the person to receive six months' gratuity pay in the event of his death. In both cases it was established that the insured, prior to that action, had indicated that the person originally named as beneficiary of his insurance was the person to receive gratuity pay. In both cases there were letters introduced that insured had written while at sea reflecting his love and affection for his wife, and clearly indicating that he believed he had taken the necessary action that would make his wife the beneficiary of his insurance.

In the Pope case the controversy was initiated before an agency in the Veterans Administration and appealed to the Board of Veterans Appeals, which Board made a finding of fact that [229 F.2d 351]:

"'* * * the record establishes a manifest intent on the part of the service man that Helen Pope be the beneficiary for all his insurance and that the intent was followed by the required affirmative action on his part, evidencing an exercise of the right to change the beneficiary of his insurance from Priscilla Smalley to Helen Pope.'"

The United States District Court for the Western District of Kentucky, upon a stipulation that the facts in evidence as set forth in the decision of the Board of Veterans Appeals would constitute the essential and material facts, held that the Board's findings were speculative, and ruled in favor of insured's sister. Smalley v. United States, 124 F.Supp. 32. On appeal, Pope v. Smalley, 6 Cir., 229 F.2d 349, the Court held that the wife was the sole beneficiary of the policy. The Court reasoned that the District Court had overlooked the "* * * salient point that the insured soldier, in his letter to his wife dated October 27, 1950, had stated unequivocally under combat conditions that he had made out to her $10,000 worth of insurance, so

that she could take care of her infant daughter." The Court continued:

"We agree with the United States District Judge in the instant case that it is not proper to base decision here upon speculation that a change of beneficiary on an appropriate form may have been executed but was lost. We do not agree with his ultimate conclusion, however, that the appellee Priscilla Smalley, was entitled to the death benefits * * *."

■ The Court finds that the insured had legally changed the beneficiary in his insurance policy from his mother to his wife, and that the wife is entitled to the proceeds of the insurance policy.

Counsel may prepare an order in accordance with this opinion.