**UNITED STATES of America,**
**Plaintiff,**

v.

**Dorothy SMITH and Elaine Smith,**
**Defendants.**

United States District Court
S. D. New York.

March 6, 1958.

742

Paul W. Williams, U. S. Atty., New York City, Arthur V. Savage, Asst. U. S. Atty., New York City, of counsel, for plaintiff.

Joseph P. Halligan, Irwin M. Katz, New York City, of counsel, for defendant Dorothy Smith.

John Dwight Sullivan, New York City, for defendant Elaine Smith.

FREDERICK van PELT BRYAN, District Judge.

■ This is an action in the nature of interpleader brought by the United States under 38 U.S.C.A. § 445 and 38 U.S.C.A. § 817, to secure an adjudication as to which of the two defendants is entitled to the benefits of a National Service Life Insurance policy in the sum of $5,000 on the life of Mark D. Smith. Defendant Dorothy Smith is the mother of the insured and defendant Elaine Smith is his wife.

Defendant Elaine Smith has moved for summary judgment and defendant Dorothy Smith cross-moves for the same relief. The facts on which the parties rely, as stated in the amended complaint, and as supplemented by various Air Force forms executed by the deceased, and the affidavits submitted by the respective parties, are, for all practical purposes, undisputed. Questions relating to a document alleged to have been executed by deceased as his last will and testament have been excluded from consideration on this motion by agreement of counsel.

The only question is whether the decedent intended to and did effectuate a change of beneficiary under the policy from his mother to his wife.

The facts are as follows:

The deceased, Mark D. Smith, then named David Mark Lincoln Boger, entered the United States Air Force in 1947 at the age of 17, having completed two years of high school. He was honorably discharged on September 2, 1953. He died on January 26, 1956, some two and one-half years after he had left the service.

On November 1, 1947, a National Service Life Insurance policy No. N20–614–045, in the amount of $5,000, was issued to the decedent. The policy named his mother, defendant Dorothy Smith, as the sole beneficiary. This insurance was renewed on November 1, 1952, by a five year term policy No. V17–384–546, which was in force and effect at the time of decedent's death.

On September 16, 1951, the insured married defendant Elaine (Rush) Smith and on January 31, 1953, a son, Brian Mark Smith, was born of the marriage. At the time of his death the insured was survived by his wife, his son and his mother. The wife and the mother both made formal claim for the death benefits provided for in the policy. Payment of the claims has been withheld pending the determination of this action.

Apparently no record of change of beneficiary of the policy on the life of the insured from his mother to his wife was

received by the Veterans' Administration prior to his death. The key to the problem of whether such a change was effected lies in a series of service forms filled out and executed by the insured while he was still in the Air Force. The wife asserts that these forms establish the intent of Mark Smith to change his beneficiary from his mother to her, and constitute such action on his part as he might reasonably be supposed to have thought sufficient to carry out this intent. The mother asserts, on the other hand, that insufficient is shown by these forms to establish either intent to make the change or that proper action was taken to effectuate it legally.

Subsequent to his marriage the insured executed the following service forms:

(a) An "Air Force Personal Affairs Statement" (Air Force Form 381).

(b) Two "Records of Emergency Data" (DD Form 93), and one subsequently revised form of "Record of Emergency Data" (DD Form 93).

(c) A "Report of Separation from Armed Forces" (DD 214).

These forms must be read together to determine the intent of the insured and the action which he took to effectuate it.

The Personal Affairs Statement (Air Force Form 381) signed by the insured is dated July 7, 1952, some nine months after his marriage. It states his address as in care of his parents-in-law, names his wife as the person to be notified in case of an emergency, as his sole dependent, and as the recipient of his allotments and nowhere mentions his mother even as an alternative person to be "contacted" in an emergency in the event of inability to find his wife.

Section 2 of the form is entitled "Government Life Insurance", and this section calls for a statement of the insurance which the serviceman then had in force under the headings "NSLI"—National Service Life Insurance—"USGLI" —United States Government Life Insurance—and "SMI"—Servicemen's Indemnity. The insured stated that he had $10,000 of National Service Life Insurance on a term plan and that he has taken advantage of waiver of premiums in this amount. Under the heading "Beneficiary Designations" followed by the language in parentheses "This does not constitute official designation of beneficiary or selection of option", he designates under National Service Life Insurance his wife, Elaine Smith, as the principal beneficiary. Passing over his mother entirely he named his mother-in-law, Mrs. Margaret Rush, as contingent beneficiary.

It may be noted that in fact the decedent did not have in force $10,000 of National Service Life Insurance at this time or any time. What he had was the $5,000 National Service Life Insurance term policy which he had originally taken out, and $5,000 of coverage under the Servicemen's Indemnity Act of 1951 (65 Stat. 33, 38 U.S.C.A. § 851 et seq.) which provided servicemen with automatic insurance without cost covering death while in the armed services and for a short period thereafter. The fact that the decedent was understandably confused as to the precise nature and amount of his Government insurance is of some significance when forms which he executed later are considered.

In any event, it is quite plain that as to all National Service Life Insurance which he had outstanding, and, indeed, with respect to all of his Government insurance, he plainly indicated in this Personal Affairs Statement that he intended to, and did, in fact, designate his wife as the beneficiary to all benefits accruing thereunder. This form of designation was twice thereafter confirmed by decedent's review of the statement, as signified by his subsequent initialing of it after the initials of a reviewing officer in the section entitled "Review Record" in August 1952 and in 1953.

Prior to this, on September 26, 1951, 10 days after the insured was married, he had executed a Record of Emergency Data (DD Form No. 93). In this form he listed his wife as the person to be

notified in case of emergency, and as the person to receive his six months' gratuity and 100 %' of his pay in the event he was unable to transmit funds. Significantly, he named as alternate beneficiaries of his six months' gratuity in case of death his mother-in-law and father-in-law respectively and not his mother. Contrary to the fact, he stated that his mother, without giving her name, was "deceased".

Again on September 9, 1952, the insured executed a second Record of Emergency Data. The same entries were made throughout and again he stated that his mother, contrary to the fact, was "deceased", and named his parents-in-law as alternate beneficiaries of his six months' gratuity.

On February 24, 1953, a few days after the birth of his son, decedent executed another Record of Emergency Data, this time on a revised form. He made the same designations as to his wife, listed his newly born son, and under Item 21, entitled "Designation or Change of Beneficiary—Servicemen's Indemnity (PL 23, 82nd Cong.)"—an item which did not appear on the previous Record of Emergency Data forms—he listed his wife "1." and his son "2." respectively as the beneficiaries to receive 100%' of such insurance.

The "Designation or Change of Beneficiary" under Item 21 contains the following limiting language: "(Does not operate as a designation or change of beneficiary of any insurance contracts issued by United States Government). All previous designations of principal and contingent beneficiaries, if any, under Servicemen's Indemnity Act of 1951, are hereby cancelled, and it is directed that said indemnity be paid to * * *."

In another part of this Record of Emergency Data for the first time the insured gives the name of his mother, Dorothy F. Smith, but again states, contrary to the fact, that she was "deceased". He also lists Robert M. Smith as his stepfather with address unknown. Again he designates his parents-in-law as beneficiaries, alternate to his wife and child, of his six months' death gratuity.

In view of the understandable confusion of the insured as to the nature and character of his insurance as shown by treating his Servicemen's Indemnity as part of his Government life insurance on his Personal Affairs Statement, the designation of his wife as "beneficiary" on the revised Record of Emergency Data tends to confirm, if that were necessary, his intention to make her the beneficiary of his National Service Life Insurance which he had already manifested in his Personal Affairs Statement.

This is strengthened by the manner in which decedent treated his insurance on his "Report of Separation from Armed Forces" (DD Form 214), which he executed on September 2, 1953. There he lists his wife as next-of-kin, and under Item 32A entitled "Kind & Amt. of Insurance & Mthly. Premium" lists his "SMI"—Servicemen's Indemnity—as $10,000, the very reverse of his statement in his Personal Affairs Statement that he had National Service Life Insurance of $10,000. This despite the fact that the form also has a space for listing his "NSLI"—National Service Life Insurance—which he left blank. Thus, it is apparent that decedent did not distinguish in his own mind between his National Service Life Insurance of $5,000 and his Servicemen's Indemnity of $5,-000, but considered them both in the same category and dealt with them interchangeably under either designation.

It is not at all surprising that an enlisted man with only two years of high school education was confused as to the technical distinction between these two forms of insurance, or, indeed, by the far from crystal clear language and cabalistic initials on the forms themselves. It would be entirely natural for him to think of the insurance supplied to him by the Government generally as "GI insurance", and to treat it as such, even assuming that the officers under whose auspices he filled out the forms gave reasonably intelligible explanations of the differences.

Thus, the indications are that the insured, when he made out his Record of

Emergency Data on February 24, 1953, believed he was designating his wife as beneficiary of all his insurance, whether it be Servicemen's Indemnity or National Service Life, as he had already done in his prior Personal Affairs Statement. Certainly there is nothing in the later form which is inconsistent with his prior action with respect to his National Service Life policy.

Moreover, this was an entirely natural thing for him to do. He had entered the Air Force and had designated his mother as his beneficiary when he was only 17. He had married five years thereafter and obviously and properly was concerned with the welfare of his wife and child. He plainly was oriented more toward his wife's family, whom he designated as alternate beneficiaries of his gratuities, than toward his mother, whom he repeatedly listed as "deceased".

True, in November 1952, when he had renewed his original five year term policy for an additional five year term, he did not indicate that his beneficiary was to be changed. But he had already done so in his Personal Affairs Statement, and no doubt did not consider any further action necessary. Moreover, he confirmed the action taken in his Personal Affairs Statement the following year.

It plainly appears from these forms that the insured intended his wife to be beneficiary of his National Service Life Insurance policy and no other conclusion could be drawn from them.

Moreover, decedent affirmatively manifested his intent by specifically designating his wife as the sole beneficiary of his National Service Life Insurance on his Personal Affairs Statement.

Is this sufficient to entitle the wife to payment of the benefits under the policy?

The regulations of the Veterans' Administration (Sections 8.46, 8.47) provide in substance that designation of a beneficiary shall be made by notice in writing to the Veterans' Administration signed by the insured; that the insured has the right to change the beneficiary at any time without the beneficiary's knowledge; that a change of beneficiary "to be effective must be made by notice in writing signed by the insured and forwarded to the Veterans' Administration by the insured or his agent"; that "Whenever practicable such notice shall be given on blanks prescribed by the Veterans' Administration", and that "Upon receipt by the Veterans' Administration, a valid designation or change of beneficiary shall be deemed to be effective as of the date of execution." It is plain that these regulations were not literally complied with.

However, as the Court of Appeals of this Circuit said in United States v. Pahmer, 238 F.2d 431, 433:

> "But in the field of National Life Insurance the cases are legion which hold that in judging of the efficacy of an attempted change of beneficiary 'the courts brush aside all legal technicalities in order to effectuate the manifest intention of the insured'. Roberts v. United States, 4 Cir., 157 F.2d 906, 909, certiorari denied 330 U.S. 829, 67 S.Ct. 870, 91 L.Ed. 1278. This case may be cited as typical of this long, unbroken, line of authority."

The Pahmer opinion thoroughly reviews the authorities dealing with this subject and it would serve no purpose to review them again here. It is plain that a change of beneficiary may be shown by proof of intent to make the change, coupled with positive action on the part of the insured evidencing an exercise of the right to change the beneficiary. The requirement of positive action is satisfied if the insured "has done everything reasonably within his power to accomplish his purpose, leaving only ministerial acts to be performed by the insurer." Roberts v. United States, 4 Cir., 157 F.2d 906, 909, certiorari denied 330 U.S. 829, 67 S.Ct. 870, 91 L.Ed. 1278. See, also, Mitchell v. United States, 5 Cir., 165 F.2d 758; Shapiro v. United States, 2 Cir., 166 F.2d 240, certiorari denied Shapiro v. Shapiro, 334 U.S. 859, 68 S.Ct. 1533, 92 L.Ed. 1779.

In Senato v. United States, 2 Cir., 173 F.2d 493, 495, the Court of Appeals of this Circuit said that the action taken to carry out the intent of the insured was enough "so long as he might reasonably be supposed to have thought it enough."

As has been pointed out, the intent of the insured in the case at bar to change his beneficiary from his mother to his wife was manifest. The insured took positive action to effectuate that change. His intent was clearly and unequivocally expressed in writing over his signature on the official Air Force Personal Affairs Statement of July 7, 1952, containing a specific designation of the wife as the beneficiary of his National Service Life Insurance. This appears to have been confirmed by the insured on at least two separate occasions thereafter.

It is true that the beneficiary designation on this form contains the limiting words in parentheses "This does not constitute official designation of beneficiary or selection of option." But to hold that the effect of this language was to vitiate the express designation of beneficiary which the insured made would be to employ legal technicalities to defeat his manifest intention rather than to brush them aside in order to effectuate such intention as the cases hold should be done.

The whole tenor of the entries on forms executed by the insured is consistent only with an intention to make his wife his beneficiary, and supports the positive action which he took in order to do so. Certainly in this case the least that may be said is that the insured might reasonably be supposed to have thought that the action taken was sufficient to effectuate his intention, and that is all that is required. Senato v. United States, supra; United States v. Pahmer, supra.

Butler v. Butler, 5 Cir., 177 F.2d 471, and Smalley v. United States, D.C.W.D. Ky., 124 F.Supp. 32, on which defendant Dorothy Smith relies, are quite distinguishable from the case at bar and do not affect this conclusion. In both of these cases the claim of the beneficiary, who contended she had been substituted, was dependent solely upon letters received by the claimant from the deceased serviceman indicating that he had had his insurance made payable to his substituted beneficiary. It was held that the letters in these cases were not sufficient to constitute appropriate affirmative action to carry out any intent which the serviceman may have had to effectuate the change. In neither of these cases was there any evidence of appropriate affirmative action taken by the serviceman to designate a new beneficiary on official service forms such as we have in the case at bar.

The fact that the Air Force Personal Affairs Statement designating the wife as beneficiary did not come into the hands of the Veterans' Administration until after the decedent's death is of no significance. Upon receipt of the properly authenticated statement of Personal Affairs from the Air Force the Veterans' Administration became obligated to pay over to the wife the benefits of the policy. United States v. Pahmer, supra, and cases there cited.

I therefore grant the motion of defendant Elaine Smith for summary judgment and deny the cross-motion of defendant Dorothy Smith.

One further matter remains to be considered. The attorney for the defendant Elaine Smith, and his associate counsel, who were brought into this matter by the National Rehabilitation Commission of the American Legion to represent the interests of the insured veteran's widow, have asked for an allowance of $500 for the services which they have rendered in this matter. Under 38 U.S.C.A. § 445 the court is directed to "determine and allow reasonable fees for the attorneys of the successful party * * * not to exceed 10 percent of the amount recovered." Such fees are "to be paid by the Veterans' Administration out of the payments to be made under the judgment * * *".

The amount asked by counsel conforms to the limitation in the statute. Extensive and effective services were

rendered by counsel in this matter, and they state that an allowance of $500 will scarcely cover the cost of their overhead. This I am quite sure is the fact. I therefore hold that the sum of $500 is a fair and reasonable fee for the services rendered by the attorney and associate counsel for Elaine Smith in this action, and an allowance is made to them in this amount pursuant to 38 U.S.C.A. § 445.

Settle order on notice.