**Margaret Rosa WALKER, Appellant,**

v.

**UNITED STATES of America et al., Appellees.**

**No. 73-1940.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 4, 1973.

Decided March 25, 1974.

Charles H. Burgardt, Fayetteville, N. C. (Joe McLeod, P. A., Fayetteville, N. C., on brief), for appellant.

David V. Seaman, Atty. Civ. Div., U. S. Dept. of Justice (Irving Jaffe, Acting Asst. Atty. Gen., Walter H. Fleischer, Atty., Civ. Div., U. S. Dept. of Justice, Thomas P. McNamara, U. S. Atty., on brief), for appellees.

Before BRYAN, Senior Circuit Judge, and CRAVEN and WIDENER, Circuit Judges.

CRAVEN, Circuit Judge:

On May 26, 1970, George Edward Walker, Jr. was killed in action in Vietnam. At the time of his death Walker had three insurance policies on his life.

---

Two of the policies, in amounts of $1,000 and $9,000, were issued in 1949 and 1950 under the nomenclature of National Service Life Insurance (NSLI); the third policy was under Servicemen's Group Life Insurance (SGLI) for $10,000 and was issued in 1965. The question presented by this appeal is whether Walker, prior to his death, did any overt act to change the beneficiary of the two NSLI policies from his former wife, Barbara A. Walker Soucy, to his second wife, Margaret Rosa Walker. The district court could find no such act, despite clear evidence that Walker intended that his second wife be the beneficiary under all three policies. Because we believe there was an overt act which, together with the undisputed evidence of Walker's intent, was sufficient to indicate a change of beneficiary from the first to the second wife, we reverse the judgment of the district court.

At the time the disputed NSLI policies were issued, Florence V. Walker, the mother of the deceased, was named as principal beneficiary. In 1954 Sergeant Walker executed DA Form 41–1 ("Designation or Change of Beneficiary —Servicemen's Indemnity") on which he named his wife, Barbara, as principal beneficiary and his mother as contingent beneficiary. Though this was not the form prescribed by the Veteran's Administration for changing the beneficiary of NSLI policies, the district court found, in the absence of any evidence that Walker was entitled to "servicemen's indemnity" at the time, that he effectively changed the beneficiary. Bew v. United States, 286 F.2d 570 (4th Cir. 1961).

In 1961 Walker obtained a divorce from Barbara, on grounds of three years separation, in the County Court of Franklin County, Vermont. Custody of their daughter was awarded to the wife. The daughter was subsequently adopted by the wife's second husband. There is no evidence that Walker had ever seen his first wife or daughter from the date of the divorce until his death nine years later. Walker married his second wife, Margaret, in 1962. One son, Gene, was born to the marriage; Walker also adopted Margaret's son from a previous marriage. The SGLI policy issued in 1965 named Margaret and the two sons as beneficiaries.

At trial Margaret testified that on numerous occasions her husband told her that if anything should happen to him she and the sons would get $20,000 worth of life insurance. This testimony is substantiated by the affidavits of two neighbors of the Walkers at Fort Bragg and by the testimony of a former agent for Metropolitan Life Insurance Company who had discussed Walker's insurance situation with him on two occasions before he began his second tour of duty in Vietnam.[1] Further evidence introduced at trial consisted of a power of attorney executed by Walker in favor of Margaret prior to his departure for Vietnam in December, 1969,[2] and a DA Form 41 ("Record of Emergency Data") which Walker filled out while in a combat zone in Vietnam in February, 1970. This latter form indicated that Margaret K. Walker was the beneficiary for unpaid pay and allowances and for allotments if Walker were to become missing in action. Under the blanks reserved for "Insurance data" only "SGLI" was written. There was no mention of the NSLI policies.

[1]. On direct examination the agent, Charles King, Jr., testified as follows:
Q. What statements did Mr. Walker make to you about his insurance?
A. Indicated to me that he had, that the $20,000 available to him through the Army would be payable to his wife and children should something happen to him.
Q. And did he say to whom it was payable?
A. To his wife, Margaret Walker, and his children.

[2]. The power of attorney was general and included the right to act as his attorney-in-fact or proxy "in respect to any policy of insurance on [his] life" excepting any right to change the beneficiary.

In Roberts v. United States, 157 F.2d 906 (4th Cir. 1946), this court said that "in war risk insurance cases involving change of beneficiary the courts brush aside all legal technicalities in order to effectuate the manifest intention of the insured . . . ." 157 F.2d at 909. Subsequently we have held that intent alone is not sufficient, Kluge v. United States, 206 F.2d 344 (4th Cir. 1953), but must be accompanied by some overt act directed toward effectuating that intent. *See, e. g.,* Bew v. United States, 286 F.2d 570 (4th Cir. 1969). We adhere to that viewpoint.

The idea of brushing aside legal technicalities in order to do substantial justice is very appealing. What makes this case difficult of decision is our incompetence to assay collateral effect. If we create a rule of subjective intent, we inevitably also create administrative problems that may affect thousands of beneficiaries under these policies. To adopt a pure-intention rule might delay payment in innumerable cases and might well result in the cumbersome procedure of interpleader with the government depositing the money in a fund for disbursement by the administrative judge or the district court after an evidentiary hearing as to the intention of the deceased soldier. Getting Rosa Walker the monies that her husband intended her to have is a worthwhile endeavor, but it may not be accomplished properly at a price of encumbering the administrative process for thousands of other claimants. We think, therefore, we must continue to insist upon an overt act and decline to adopt a rule of intention that may be sustained simply by oral testimony. We think the Fifth Circuit has balanced, as well as it can be done, the need for reasonably rapid processing of claims against the wish to assure that in as many cases as feasible the actual beneficiary is the one intended by the deceased serviceman. In Smith v. United States,

421 F.2d 634 (5th Cir. 1970), the court stated:

> In those cases where the proof of intent is clear and convincing, the rationale is that a lesser quantum of proof is required to show the affirmative act to carry out the intent to make the change.

421 F.2d at 635. In this case the proof of intent, as in S*mith,* is "clear and convincing," as the district judge seemed to recognize.[3] But the lower court understandably felt constrained by our opinion in Collins v. Collins, 378 F.2d 1020 (4th Cir. 1967). In *Collins* the issue was precisely the same as in the case at bar. The serviceman in *Collins* told his wife "that he had 'willed' his insurance to her and that she would be taken care of for the rest of her life." 378 F.2d at 1020. The alleged overt act was the execution of a "Record of Emergency Data" form similar to that which Walker filled out. Collins designated his wife as beneficiary of his unpaid pay and allowances, and, in the blank designated for listing insurance policies, listed "NSLI". He did not, however, fill in the space on the form in which he might have listed the beneficiary of this insurance. On this basis the court found there was no overt act since "the execution of the form is equally consistent with an intention on the part of the insured to leave his father and sister as the designated beneficiaries as with an intention to change the designated beneficiary to his wife." 378 F.2d at 1020.

We think, admittedly with some hesitation, that the case presently before us is factually distinguishable from *Collins.* The showing of intent by the appellant here is significantly more convincing since the testimony of his wife, who stands to benefit from the finding of a change of beneficiary, is supported by affidavits from neighbors and the testimony of an insurance agent whereas in *Collins* the wife's testimony was ap-

---

3. In his "Memorandum of Decision" the district judge stated: "From this evidence the court has no hesitance in finding the insured fully intended that his widow, Margaret, should receive the proceeds of all of this insurance at his death."

parently the only evidence of intent. The form executed by Collins differed from that filled out by Walker in that the later DA Form 41 called only for "insurance data" rather than calling to the soldier's attention the difference between SGLI and NSLI and providing a space for the listing of beneficiaries under the policies enumerated. Furthermore, the "equally consistent" conclusion in *Collins* that the serviceman intended for his father and sister to benefit from his insurance is absent here. The government does not seriously contend that Walker intended that the NSLI proceeds should go to a wife with whom he had not lived in twelve years and from whom he had been divorced and had not seen for nine years. That Walker had no such intention is further strengthened by the obligation of support which he owed to his two sons.

It is quite apparent that long before George Walker went to Vietnam he believed he had made his second wife and his two sons the beneficiaries of all three of his insurance policies, either because of the mere fact of his divorce from his first wife or because of some action taken by him of which there is no record. The acts of granting his second wife a general power of attorney and filling out his Record of Emergency Data, DA Form 41, are certainly consistent with this belief.

Because we believe a less overt act is necessary to change a beneficiary in war risk insurance cases where clear and convincing proof of intent is made, we treat these acts together as sufficient to constitute the overt act necessary to find that George Walker changed the beneficiary of his NSLI policies prior to his death.

Reversed.

WIDENER, Circuit Judge, dissenting:

I must respectfully dissent.

I would affirm on the opinion of the district judge. He heard the evidence of witnesses *ore tenus,* in open court, and,

in a written opinion, found that "[p]laintiff's difficulty lies in the absence of any evidence that George ever did any overt act toward implementing this intention," and again, "the plaintiff has therefore failed to establish this essential element [an overt act] of her claim by any evidence, much less the required preponderance of the evidence." I think whether or not there has been an overt act is within the rule that findings of fact shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. FRCP 52(a). I do not consider the findings by the trial judge, especially since they are concerned with the weight and sufficiency of evidence, to have been clearly erroneous.

As mentioned by the majority, its opinion may very well be disturbing not only to the United States in this case but to the thousands of beneficiaries of war risk insurance policies written by the United States and by private insurance companies. There are in force at this time at least three kinds of war risk insurance, National Service Life Insurance, 38 U.S.C. § 301 et seq; United States Government Life Insurance, 38 U.S.C. § 740 et seq; and Servicemen's Group Life Insurance, 38 U.S.C. § 765 et seq. National Service Life Insurance and United States Government Life Insurance policies are written by the United States; however, Servicemen's Group Life Insurance is written by private insurance carriers, 38 U.S.C. § 766 et seq.

In the case before us, the United States has already paid the claim to Barbara, a previous wife. If Barbara has dissipated the money, or even if she has not, the United States may very well be put into the position of paying twice. 38 CFR § 8.47, concerning National Service Life Insurance, provides that "a change of beneficiary to be effective must be made by notice in writing signed by the insured and forwarded to the Veterans Administration . . .;" 38 U.S.C. § 770(a) provides Servicemen's Group Life Insurance may be pay-

able to the beneficiary " . . . designated by a writing received in the uniformed services prior to such death," see also 38 CFR § 9.16(c) for change of beneficiary; and 38 CFR § 6.60 provides, for United States Government Life Insurance, that a change of beneficiary must be " . . . made by written notice to the Veterans Administration over the signature of the insured and shall not be binding on the United States unless received by the Veterans Administration." So the methods for designating beneficiaries, or changes, are not too different in at least three kinds of war risk policies currently in force. While it may only be distasteful and inconvenient to the United States to be required to pay out the proceeds of an insurance policy twice, and it is doubtful if this mild attitude will characterize future payments, I suggest that private insurance companies must take a far more sanguine approach toward payment of war risk policies in the future, since there will be a greater possibility of paying twice. As such, I can only foresee a great increase in the amount of litigation concerning the payment of the proceeds of war risk policies, and especially I would expect a considerable increase in the number of interpleader actions filed both by the United States and by private insurance companies in order to avoid double payment. Litigation, of course, in all events will cause much delay in paying just claims to needy beneficiaries.

For reasons best known to itself, the United States has not pleaded that part of 38 CFR § 8.47 which furnishes a defense to the United States for payments made before proper notice of change of beneficiary has been received by the Veterans Administration under National Service Life Insurance policies. A similar, if not identical, provision exists for United States Government Life Insurance, 38 CFR § 6.60, but Servicemen's Group Life Insurance apparently does not carry any such defensive regulation or statute. 38 U.S.C. § 765 et seq, 38 CFR § 9.1, et seq. While these provi-

sions have thus far been relatively free from litigation, I cannot but expect both the United States and private insurance companies to assert every defense to payment in the future to avoid the possibility of the double payment which has occurred in this case.